Curtis *v.* Brooks.

## CURTIS *vs.* BROOKS.

The intermarriage of the maker with the payee and holder of a note operates to discharge the note, and all liability thereon on the part of the maker.

Where the plaintiff purchased of the defendant a note made by the defendant's wife, with knowledge that it was made by her while she was sole, and that she had intermarried with the defendant while he was the owner and holder thereof, *it was held* that there was no implied warranty in respect to the validity of the note.

*Held, also,* that there was no implied warranty that the law, upon the facts disclosed, did not declare the note discharged, by the intermarriage of the maker and the payee.

Where the facts are known to the parties, there is never any *implied* warranty that the law upon those facts is or is not as the parties may think or desire it to be.

It is a maxim of the law that parties are presumed to know the law upon the undisputed facts of the case. Hence a warranty that the law is different from what it is, and from what it is presumed the parties know it to be, cannot be implied by operation of law.

THIS action was tried at the Cattaraugus circuit in June, 1861, before Justice GROVER and a jury. On the trial it was proved, in substance, that in January, 1860, the defendant sold the plaintiff a promissory note for $500, bearing date March 20, 1856, and payable the first day of October then next, to the defendant or bearer, and made by one Adams and by one Fanny J. Stone. That at the time of making

said note the said Fanny was sole and unmarried, but subsequently, and before the sale of the note, she and the defendant intermarried, and have ever since been husband and wife. That at the time of the sale of the note the defendant verbally promised the plaintiff that if he could not collect the note of the makers he would pay it to the plaintiff; but the plaintiff had instituted no proceedings to collect the same of the makers before the commencement of this action. And that on such sale the defendant informed the plaintiff of all the facts in regard to the note and the makers thereof, and expressed the opinion that the note could be collected of the said Fanny, then his wife; and informed him that Adams, the other maker, was a resident of California, and wholly insolvent. That the plaintiff paid for the note the sum of $100, and there was then due thereon the sum of $684.23. Upon these facts the court directed a verdict for the plaintiff for the amount of the note, subject to the opinion of the general term on a case to be made. The plaintiff now moved for judgment on the verdict.

*S. S. Spring,* for the plaintiff.

*A. G. Rice,* for the defendant.

*By the Court,* DAVIS, J. The only ground on which the plaintiff claims to be entitled to recover is upon an implied warranty of the validity of the note; and this is the only question necessary to be examined. This court, at general term, lately held, in respect to the very note above mentioned, that the intermarriage of Fanny J. Stone, the maker, with Brooks, the payee and holder, operated to discharge the note, and all liability thereon on the part of the maker. (*MS. opinion by Hoyt, J.*) This being the law on the case, we must hold the note, at the time of its transfer by the defendant to the plaintiff, to have been wholly invalid as against Mrs. Brooks. On the sale and delivery of a note without in-

dorsement or express guaranty, the law implies a warranty of certain facts. " Unless it be otherwise expressly agreed, the holder so transferring the note is not exempt from all obligations or responsibilities, but he incurs some, although they are of a limited nature. In the first place, he warrants, by implication, unless otherwise agreed, that he is a lawful holder and has a just and valid title to the instrument, and a right to transfer it by delivery; for this is implied as an obligation of good faith. In the next place, he warrants in like manner that the instrument is genuine, and not forged or fictitious. *. * * In the next place, he warrants that he has no knowledge of any facts which prove the instrument, if originally valid, to be worthless, either by the failure of the maker or by its being already paid, or otherwise to have become void or defunct; for any concealment of this nature would be a manifest fraud." (*Story on Prom. Notes*, § 118.)

In respect to the maker, Adams, the note was a valid one, and the proper subject of sale and transfer. The defendant was the owner and holder, and had good right to transfer the same, as against him. He expressly informed the plaintiff of the insolvency and non-residence of Adams. As to him, therefore, the plaintiff got good title to the note, under circumstances from which no implied warranty can arise ; or at least from which none can be said to be broken. The note is a valid instrument in the hands of the plaintiff; and it is not pretended that it is either fictitious or forged, as to either of the makers. Upon the facts before us, is there any implied warranty in respect to the validity of the note as against the wife of the defendant ? It certainly cannot be claimed that there was an implied warranty, within the rule as laid down by Judge Story, that the defendant had no knowledge of any facts " which prove the instrument, if originally valid, to be worthless, either by the failure of the maker or by its being already paid, or otherwise to have become void or defunct." The reason of this rule is that the concealment of such facts " would be a manifest fraud," and in this case, instead of any

Curtis *v.* Brooks.

concealment or silence, there was a full disclosure of all the facts within the knowledge of the defendant. Certainly the law cannot imply that the defendant warranted that the facts he was thus disclosing to the plaintiff were not within his knowledge !

Nor can it be said that the fact which causes the invalidity of the note (as to Mrs. Brooks) was by any legal implication warranted not to exist. Its existence was not only known to both the parties, but was expressly stated by the defendant to the plaintiff. It seems to me it would be absurd to hold that on the sale of property any fact affecting its title, quality or validity, which is distinctly disclosed and known to the purchaser, can be said to be warranted by implication not to exist. There may be a warranty that an apparent incumbrance or asserted hostile title will not ripen into or prove to be a paramount title ; and such I understand to be the effect of the decision in *Dresser* v. *Ainsworth,* (9 *Barb.* 619,) so far as it bears upon this point.

There was no fact affecting the validity of the note that was not disclosed to the plaintiff just as it in truth existed. The warranty therefore which must be implied in order to sustain the action is that the law, upon these facts, does not declare the note discharged as to the married woman. If there be such an *implication* of warranty, then according to the decision of this court it was broken, because by the marriage the note was fully discharged or released. But I think there was no such implication. Whatever may be the force of an *express warranty* that the law in a given case is as the party may represent it, I think where all the facts are known to the parties there is never any *implied warranty* that the law upon those facts is or is not as the parties may think or desire it to be. The law in such a case is *always certain*. The uncertainty about it grows out of the fallibility of the human judgment in discerning and applying it. It is a maxim of the law that parties are presumed to know the law upon the undisputed facts of their case ; and hence a war-

ranty that the law is different from what it is, and from what it is presumed the parties know it to be, cannot be implied by operation of law.

Besides, the law never implies a warranty against the consequences of known defects. A special or express warranty must be required in such a case in order to protect the party dealing with such knowledge. The plaintiff knew, when he bought the note, that it was against the defendant's wife; that she had given it to him while sole, and had intermarried with him while he was its owner and holder. It was the doubt as to the legal effect of these facts that the parties had in their minds; and because of this doubt known to and felt by both of them, the defendant sold a note otherwise good and collectable, for some $600, for $100. If the law be as the plaintiff claims it, instantly upon his paying $100 the defendant owed him and was bound to pay $600, because the law is different from what he supposed it to be.

I think the parties must be held to have mutually "taken the chances," in this trade—the one that if the note should be held valid upon the known facts, he would get $600 for $100—the other, if the note proved invalid, he would get $100 for an article of no real value.

The defendant, in my opinion, is entitled to judgment upon the verdict.

[ERIE GENERAL TERM, September 2, 1861. *Marvin, Davis* and *Grover,* Justices.]