[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 97 
The first two counts of the declaration allege a purchase by the plaintiffs of the defendant of twenty-seven bales of blankets by sample, and a warranty that all the blankets in the bales were of like goodness and quality with the sample exhibited; averring a breach of the warranty to *Page 98 
consist in this, that the blankets contained in seventeen of the bales were not of like goodness and quality with the sample, but were moth-eaten and damaged, whereby such blankets became of no value to the plaintiffs. The third count alleges a purchase of the like number of bales of blankets on a warranty that all the blankets in the bales were good, merchantable blankets, free from damage; averring that the blankets contained in seventeen of the bales were bad, damaged, and unmerchantable. But, in considering this case, the third count may be laid out of view, as it was not at the trial pretended that there was any evidence of an express warranty to sustain it.
As a general rule, it is well established, as well by our law as by the common law, that where there is neither fraud nor express warranty on an executed contract for the sale of a chattel, the buyer takes the risk of its quality and condition. No warranty of any kind (unless it be in respect to the title of the seller) can be implied from the fact that a sound price was paid. The maxim is, caveat emptor, and not caveat venditor. (2 Kent's Com., 479-80, Seixas v. Wood, (2 Cain's, 48);Snell v. Moses, (1 Johns., 96); Perry v. Aaron, (Ib.,
129); Defrees v. Treemper, (Ib., 274); Holden v. Dakin,
(4 Johns., 421); Davis v. Meeker, (5 Johns., 354);Heermance v. Verney, (6 Johns., 5); Swett v. Colgate,
(20 Johns., 196); Welsh v. Carter, (1 Wend., 185);Moses v. Mead, (1 Denio, 378); The Oneida Manuf. Co., v.Lawrence, (4 Cowen, 440).
There is, however, an exception to this rule of the common law, as well established, in our law, and in the English law, as the rule itself, which allows a warranty to be implied on a sale of goods by sample, that the article is, in bulk, of the same kind, and equal in quality with the sample exhibited, in reference to which the parties contracted. When a contract for the sale of goods is made by sample, it amounts to an undertaking on the part of the seller with the purchaser, that all the goods are similar both in nature and *Page 99 
quality to those exhibited; and if they be not, the purchaser may either rescind the contract by returning the goods in a proper time, or keep them and recover damages for the breach of such warranty. (2 Kent's Com., 481; Story on Contracts, § 540;Waring v. Mason, 18 Wend., 425; Wright v. Hart, (Ib.,
449); Moses v. Mead, (1 Denio, 378); Sands v. Taylor,
(5 Johns., 395); Andrews v. Kneeland, 6 Cowen, 354;Beebee v. Robert, (12 Wend., 413); Bradford v. Manly,
(13 Mass., 139); Boorman v. Johnson, (12 Wend., 566);Parker v. Palmer, (4 Barn. and Ald., 387); Germain v.Burton, (3 Starkie R., 32, note a.) But the mere circumstance that the seller exhibits a sample at the time of the sale, will not of itself make it a sale by sample, so as to subject the seller to liability on an implied warranty as to the nature and quality of the goods; because it may be exhibited, not as a warranty that the bulk corresponds to it, but merely to enable the purchaser to form a judgment on its kind and quality. If the contract be connected by the circumstances attending the sale, with the sample, and refer to it, and it be exhibited as the inducement to the contract, it may be a sale by sample; and then the consequence follows, that the seller warrants the bulk of the goods to correspond with the specimen exhibited as a sample. Whether a sale be a sale by sample or not, is a question of fact for the jury to find from the evidence in each case; and to authorize a jury to find such a contract, the evidence must satisfactorily show that the parties contracted solely in reference to the sample exhibited. That they mutually understood that they were dealing with the sample as an agreement or understanding that the bulk of the commodity corresponded with it: or, in other words, the evidence must be such as to authorize the jury, under all the circumstances of the case, to find that the sale was intended by the parties as a sale by sample, (Waring v. Mason, (18 Wend., 425); Long on Sales, Rand.Ed., 192; Story on Contracts, § 540; Gardiner v. Gray, (4Camp., 144); Meyer v. Everth, (Ib., 22). *Page 100 
That a personal examination of the bulk of the goods by the purchaser at the time of the sale is not practicable or convenient furnishes no sufficient ground of itself, to say that the sale is by sample. The want of an opportunity, from whatever cause, for such an examination, is doubtless a strong fact in reference to the question of the character of the sale, whether it was or not made by sample. But it is nevertheless true, that a contract of sale by sample may be made whether such examination be practicable or not, if the parties so agree. Where the acts and declarations of the parties in making the contract for the sale of goods are of doubtful construction, evidence that it was impracticable or inconvenient to examine the bulk of the goods would be proper, and in connection with evidence of other circumstances attending the transaction might aid in coming to a correct conclusion in respect to the true character of the contract.
It was conceded on the trial, as well as on the argument here, that there was no express warranty of the quality or condition of the blankets by the terms of the contract. The ground for a recovery as claimed, was, that the sale was by sample, and that the blankets not being equal in quality and goodness with the sample, in reference to which the contract was made, there was a breach of the implied warranty attached to such a sale of goods.
On the trial, to establish a sale by sample, the plaintiff was allowed, though the evidence was objected to, to prove that there was a general usage in the market in New York on the sale of French blankets in bales, to buy and sell by samples; and if, upon examination subsequently made, the article was found to be defective in quality, it was the usage for the seller to make allowance therefor. Several witnesses who had dealt in the article at that place testified that such usage or custom to some extent prevailed there.
When the testimony was closed, the defendant's counsel insisted, and requested the judge to charge the jury, that the plaintiff had not furnished any sufficient proof of such custom *Page 101 
or usage which could or ought to affect the defendant, or which the jury ought to take into consideration. The judge, however, in respect to that, charged that the evidence did not establish any general or uniform usage, such as would prove a contract, or warrant the jury, from the usage merely, to find that the parties contracted with the understanding that the sale was by sample; and remarked to the jury that the evidence was not admitted for the purpose of proving a general usage of trade, forming a part of the contract, or of itself establishing a sale by sample; but that it was received as an item of testimony, tending to show, in connection with other evidence, that a personal examination of the bulk of the goods sold was never contemplated by either party, and that both parties intended to contract upon thesample only; that the evidence of usage would be effective to the extent of showing that both parties intended to contract upon the sample only, if they were satisfied, both, that there was a general usage in that trade to sell by exhibiting a specimen, and that on such sale there was a mutual understanding that the bulk should be like the specimen in all respects.
I think that the evidence of the existence of the custom or usage mentioned, for the object specified, was improperly admitted, and the charge of the judge in respect to the effect which the jury might give to that evidence, erroneous.
Although the judge, in the course of his charge, told the jury that the evidence did not establish any general and uniform usage, such as would prove a contract, or warrant them, from the usage so proved merely, to find that the parties contracted with the understanding that the sale in question was by sample; yet he finally charged substantially, that the jury, if they were satisfied that there was a general usage in the trade mentioned, to sell by sample, and also to sell with a mutual understanding that the bulk should be like the sample, they might give such evidence the effect, to establish the fact, that the parties inthis case intended to contract upon the sample. I agree with the court in Thompson v. *Page 102 Ashton, (14 Johns., 317,) that no custom in the sale of any particular description of goods can be admitted to control the general rules of law; that such a principle would be extremely pernicious in its consequences, and render vague and uncertain all the rules of law on the sale of chattels. See also Yates v.Pym, (6 Taunt., 446; Story on Contracts, § 12; SchoonerReeside, (2 Sumner, 567); The Mutual Safety Ins. Co. v.Hone, 2 Comstock, 235; Cow. and Hill, notes, 1411-2,Greenleaf Ed., § 251, 252.
Every contract is founded upon the mutual agreement of the parties, express or implied. Both species of contract are, however, equally founded upon the actual agreement of the parties, and the only distinction between them is in regard to the mode of proof. In an implied contract the law only supplies that which, although not stated, must be presumed to have been the agreement intended by the parties. As where a party avails himself of the benefit of services done for him, although without his positive authority or request, the law supplies the formal words of contract, and presumes him to have promised an adequate compensation. So where a person buys an article without stipulating for the price, he is presumed to have undertaken to pay its market value; or where he allows another to do any work, or make any article for him, he impliedly binds himself to pay what it is worth; or where he holds the money of another, as trustee or bailee, the law supposes a promise to restore it. The circumstances, however, must be such as unequivocally to imply a contract between the parties.
So, where a person sells goods by sample, he is presumed to warrant that the bulk is of the same kind, and equal in quality with the sample, in reference to which the contract is made. But to enforce such a contract, when denied to have been made, it must be established by evidence of the acts and declarations of the parties tending to prove a contract of sale by sample, as in any other case of alleged contract. It cannot be established by proof that it was a general custom *Page 103 
or usage of persons dealing in the article thus to contract. In the case under consideration, it in effect was submitted to the jury that upon evidence, conceded to come short even of establishing a general usage in the particular trade, they might find that both parties intended to contract upon the sample only; if they were satisfied that there was the general usage alluded to. I think the jury should have been charged that the evidence given of usage ought not to affect the defendant, as any proof of the contract alleged to have been made between the parties, or as showing that the parties intended so to contract.
A question was made on the argument, that parol evidence was improperly admitted to prove that the blankets were sold by sample; that as there were sale notes of the contract given, they were alone the evidence of the contract, and the admission of parol evidence that the sale was by sample, was a violation of the rule which excludes such evidence to contradict, alter, or vary a contract reduced to writing. It is enough, in respect to this question to say, that it was not made by the bill of exceptions. The evidence was not objected to when admitted, nor did the defendant move to strike out that evidence after the sale notes were given in evidence, nor was there any exception taken to the refusal or neglect of the judge to charge in respect to it as requested.
The judgment must be reversed, and a new trial granted, with costs to abide the event.