(55 App. Div. 585.)

SMITH v. COE et al.

(Supreme Court, Appellate Division, First Department. December 7, 1900.)

1. APPEAL—HARMLESS ERROR.
  The improper exclusion of competent evidence is harmless error, if its admission would merely confirm the conclusion reached.

2. PAROL EVIDENCE—CONTRACT OF SALE.
  Where a sale was consummated by correspondence, declarations of the seller's agent as to the subject-matter of the sale, made before the correspondence was entered into, are inadmissible.

3. SALE BY SAMPLE—VARIATION—DEFECT.
  Where one purchasing goods from a manufacturer orders by sample, but at the same time requires numerous changes and variations in the article to be manufactured, the transaction is not a sale by sample; and hence there is no implied warranty that the quality of the manufactured article shall correspond to the sample exhibited.

4. SALES—ACCEPTANCE—DEFECT—WAIVER.
  Though one purchasing goods by sample can retain an inferior quality and sue for a breach of the implied warranty, one contracting for their manufacture without a warranty cannot retain defective articles, after a reasonable opportunity for examination, without becoming liable for the whole contract price.

Action by Frank Sullivan Smith, receiver of the Worcester Cycle Company, against Edward P. Coe and another, etc. Judgment for plaintiff. Motion for a new trial on exceptions heard in the first instance at the appellate division. Denied.

The action was brought to recover $13,300 for goods delivered under a contract. The complaint states that the plaintiff was appointed receiver of the Worcester Cycle Company in 1897, and alleges two causes of action: First, that the receiver on or about February 10, 1898, contracted with the defendants to manufacture for and sell them, upon specifications furnished, 3,000 bicycles, of which 1,230 were delivered and accepted, amounting to $24,600, on which has been paid $13,000, leaving still due and unpaid the sum of $11,600; and, second, that the receiver on May 9, 1898, sold and delivered to the defendants 100 juvenile bicycles, amounting to $1,700, which sum has not yet been paid. As to the first cause of action, the answer admitted that a contract was made for the manufacture of bicycles upon specifications, and that 1,230 wheels were delivered, but denied that they were accepted, alleging "that the same were defective in many parts, that they were not made in accordance with the terms of said agreement, that they were not the bicycles for which the said defendants had contracted, and that they refused to accept the same in fulfillment of said contract." So, also, as to the second cause of action, the answer admits the agreement entered into, and the delivery of certain bicycles and payment on account of the agreement, but alleges that the wheels were defective, and the defendants have refused to accept the same and have been ready to return them. The answer further sets up two counterclaims growing out of the agreements: First, that by the contract of February 10, 1898, by which the plaintiff was to deliver the defendants bicycles for shipment to Germany, "it was agreed between the said defendants and the said plaintiff that the said bicycles should be equal to, and of the same kind and quality as, certain samples submitted by the said plaintiff to the said defendants, and that said bicycles should be manufactured according to certain specifications"; that the bicycles upon their arrival in Germany were found not to have been manufactured as stipulated, in consequence of which defects the defendant was damaged in the sum of $13,688. Similarly a second counterclaim is alleged, resulting from plaintiff's failure to duly perform the contract of May 9, 1898, the damage being stated at $300. At the trial the plaintiff testified that 2,481 wheels were delivered at the dock in New York, of which 1,025 were paid for, and $13,300 was paid on the balance, leaving the amount unpaid $13,200. The

defendants' testimony is that, when the consignments of wheels arrived at the dock, shipping receipts were given, which they exchanged for bills of lading, no examination being made until the goods were placed in a warehouse and in a store in Germany, as the wheels were separately wrapped, and crated in bundles of five, and that upon such examination the wheels were found to be apparently defective, and different from the specifications and sample. Letters were introduced to show what the terms of the contract provided. The court, upon the evidence, dismissed the counterclaims, and directed a verdict for the plaintiff for $13,200, and ordered the exceptions to be heard in the first instance at the appellate division.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Edward B. Whitney, for the motion.

Austen G. Fox, opposed.

O'BRIEN, J. That the bicycles were manufactured and delivered under some kind of binding contract, with ascertained terms and definite obligations, appears from the pleadings and the proof. The answer admits that the defendants entered into an agreement with the plaintiff whereby the goods mentioned in both causes of action were to be manufactured and delivered, and the conditions and stipulations of this contract are to be gathered from the correspondence between the parties.

The first exception we are called upon to consider relates to the rejection by the trial judge of part of the correspondence, which the defendants insist should have been admitted in evidence, as necessary to a proper understanding of the ultimate agreement between the plaintiff and the defendants. The defendants claim that, as the result of all the correspondence referred to, it would have been made to appear that the contract was for the sale of goods by sample, with a collateral contract of warranty; that they were entitled to recover on the counterclaims for the breach of that warranty; and that they also had a good defense to the plaintiff's claim on the ground of nonperformance of the contract by him. All of the rejected letters appear in the record, and, as the learned trial judge directed a verdict, we can examine them, and determine their competency, and, if they are admissible, their bearing upon the rights of the parties. We think they were competent, and will consider them; but, as we shall attempt to show, they confirm the legal conclusion reached by the trial judge as to the nature of the contract, and therefore the appellant was not injured by the exclusion. The evidence shows that, in the negotiations leading up to whatever contract was made between the parties, a specimen of a bicycle was exhibited by some one connected with the plaintiff to the defendants, and that it was understood in a general way that the goods, the subject of the contract, were intended for shipment abroad to purchasers from the defendants. One McDonald was connected with the plaintiff, and he seems to have been the person who exhibited the specimen bicycle to the defendants. His declarations concerning the subject-matter of the contract before the correspondence was entered into were excluded on the trial of the action, and we think properly so. The correspondence from which the contract is to be

made out was begun on the 19th of January, 1898, when the defendants wrote a letter to the Worcester Cycle Company, stating that they had just received letters from England in regard to the bicycles, and that they had received a copy of an order and contract from persons abroad; and they asked that the papers be looked over carefully, and proposed that there should be a talk about the matter. Accompanying that letter was a memorandum of order and contract for 3,000 bicycles, "cycle same as sample submitted," but with specified directions relating to tires and to handle bars, and a number of other very minute details of specified requirements in manufacture. That letter was followed by another from the defendants, addressed in the same way, and dated January 31, 1898, specifically directing the manufacture as to name plates, pedals, chains, brakes, wood rims, tires, axles, and cones, and other particulars; and on the same day another letter was sent by the defendants to the same address, stating that, in addition to the alterations for the specification sent that morning, the bicycles would also have to be made in accordance with conditions and changes specified in a letter written by the cycle company to the defendants on January 20, 1898. On the 1st of February, 1898, the plaintiff wrote to the defendants a letter stating that, in reply to theirs of the 19th and 31st of January, their order for 3,000 of the machines was accepted, under the conditions and specifications "as outlined by you in yours of the 19th of January." But in the same letter it was stated that certain changes could not be made without extra charge. On the next day the defendants wrote the plaintiff that they could not consent to this extra charge, and thereupon there followed several letters relating to the extra charges, and what the specifications called for, all of which were rejected. Finally, on February 11, 1898, the defendants wrote to the plaintiff, in one of the rejected letters, that they were in receipt of a communication from the plaintiff dated a day before, and were glad to know he had "at last fully accepted our order for three thousand bicycles, as set forth in our previous correspondence, to be delivered as per specifications, with no extra charges whatever. Consequently we fully confirm our contract to you."

There are no changes in the specifications in any of the rejected correspondence from those originally required; and, while it may have been a technical error to exclude all this correspondence, yet the substantial contract of the parties was left as it was made by the plaintiff's acceptance of the original order of the defendants, with the specifications accompanying that order. This rejected correspondence being before us, we are unable to see that, had it been admitted in evidence, the nature and terms of the contract would have been varied; for, by the last of the letters in the series, it is quite plain that the defendants understood that the manufacture was to be under their original proposition, with the specifications, and, as the plaintiff proceeded to manufacture and deliver after the receipt of that last letter, he also must have had the same understanding. What, then, was the nature and legal character of this contract, as evidenced by the entire correspondence? If it was purely and simply a sale by sample, with a warranty of correspondence

in quality of the goods to be manufactured with the sample exhibited, the defendants would have been entitled to recover on their counterclaims. It is impossible, however, to hold that there was any express warranty made of the goods to be manufactured and delivered under the contract. Nor was there an implied warranty, for we do not consider this to have been a sale by sample. "Such a sale contemplates that the goods are in esse, that the sample is taken from the bulk, and that the latter is equal in quality to the sample." Gurney v. Railroad Co., 58 N. Y. 358, 364. That is a general definition of a sale by sample. We do not mean to say that a case could not arise in which, even in executory contracts for the manufacture of goods, a warranty of quality might not be implied; but in the case before us it is evident that the great number of changes and variations and differences between the article to be manufactured and the specimen bicycle indicated that there could not have been an understanding on the part of the defendants that the goods to be manufactured should conform to the specimen exhibited. That general similarity of style might be expected is probable, but there is no ground for the inference that, with all the modifications and departures from the specimen exhibited, there should be in the manufactured goods an identity of quality with that of the specimen. As said by the trial judge, "There is, of course, no magic in the words 'equal to sample.'" They may be used to indicate the type or pattern, while the details of construction may be set forth in specifications. If the sale had been strictly one by sample, the purchaser undoubtedly could have retained the goods and sued for the breach of warranty; but in executory contracts for the manufacture of goods, where there is no warranty, acceptance of the goods after an opportunity to examine renders the purchaser liable for the contract price. In the Gurney Case, supra, the rule, as stated by Chief Judge Church, is as follows (page 364):

"When articles are sold upon an executory contract like the one in question, * * * the delivery and acceptance of the articles after examination, or an opportunity to examine them, is a consent or agreement that the articles correspond with the contract, and precludes a recovery for any defect which may exist. * * * The vendee must immediately rescind the contract, and return or offer to return the goods. He cannot retain the property, and afterwards claim damages by action, or recoupment for inferior quality. Such a transaction differs from a sale with warranty, in that the stipulated quality is a part of the contract itself, and not collateral to it. In the latter case the vendee is not bound to return the property, but may retain it and sue upon the collateral agreement."

In Studer v. Bleistein, 115 N. Y. 316, 325, 22 N. E. 243, 5 L. R. A. 702, the rule as stated in the Gurney Case is reaffirmed, and reference is made to Norton v. Dreyfuss, 106 N. Y. 90, 21 N. E. 428, and other cases; and it is said that the rule given in Norton v. Dreyfuss was that, assuming that there was no fraud inducing the acceptance—

"The acceptance by the vendee of articles manufactured for him under an executory contract, after an opportunity to examine them, precludes him from raising any question as to defects or imperfections which were visible and capable of discovery on inspection, unless there is a warranty of their quality,

which was intended to survive their acceptance, and gives the vendee further
time for trial and examination."

The rule as laid down in the cases referred to is not affected by
what was decided in Brigg v. Hilton, 99 N. Y. 517, 3 N. E. 51. In
the Brigg Case it is said (page 529, 99 N. Y., and page 56, 3 N. E.):

"If the sale is of existing and specific goods, with or without warranty of
quality, the title at once passes to the purchaser; and, where there is an ex-
press warranty, it is, if untrue, at once broken, and the vendor becomes liable
in damages, but the purchaser cannot for that reason either refuse to accept
the goods or return them. If the contract is executory, and the goods yet to
be manufactured, no title can pass until delivery or some equivalent act, to
which both parties assent, and, when offered, the vendee may reject the goods
as not answering the bargain; but, if the sale was with warranty, he may re-
ceive the goods, and then the same consequences attach as in the former case,
and, among others, the right to compensation if the warranty is broken."

In that case there was an express warranty, and the jury so found,
and therefore it did not follow that the acceptance of the goods de-
feated the defendants' right, because it was the intention of the par-
ties that the warranty should survive the acceptance. In the pres-
ent case we agree with the trial judge that there was no warranty,
express or implied, that survived the delivery and acceptance of the
merchandise. This construction of the contract renders it unnec-
essary to discuss at length the question of where delivery was to be
made; for the whole of defendants' argument, upon which the right
to recover on the counterclaims is based, proceeds upon the theory
that, this being a sale by sample, there was a warranty, which was
enforceable without returning or offering to return the goods. It
may not be amiss, however, to discuss briefly the question of deliv-
ery and acceptance. It is not claimed that a delivery of some of the
bicycles was made according to contract, while others were of in-
ferior quality. The claim is that all were equally bad, as not con-
forming to sample. This makes it necessary to consider, on the ques-
tion of acceptance, not alone the last shipment that was made, but
the prior shipments, also; for, if all were equally defective, then,
clearly, it was defendants' duty to examine the first as well as the
last shipment, and make their election to rescind the contract, un-
less they were willing to stand on the ground that they had a war-
ranty which would survive acceptance. The greater part of the
bicycles were delivered in March and April, and, allowing for the
time that would be taken by the vessel in crossing the ocean, it is
evident that more than a reasonable time elapsed after their arrival
in Germany before the defendants took any steps to rescind the con-
tract. Considerable stress, however, is laid upon the fact that con-
signments of 655 bicycles were made between April 7th and May
11th, and the suit was commenced on May 16th, so that a sufficient
time had not elapsed to defendants, assuming that their right to ex-
amine and reject continued until the arrival of the bicycles in Ger-
many. There is nothing to show that upon such arrival, or within
a reasonable time afterwards, the defendants rejected or offered to
return the bicycles; and we have the testimony of the plaintiff that
he "never received any knowledge of any complaints that the con-
tract was not being carried out with entire satisfaction to the de-

fendants until the failure of Gutberlet & Schneider," which, it is admitted, occurred some time in August. Delivery, it was understood, was to be f. o. b. steamer in New York, and it is urged that it was the duty of the defendants to examine the goods at that place. This argument is supported by the fact that defendants exchanged the shipping receipts from Worcester to New York for bills of lading in their own name, and thus the title became vested in them. On the other hand, however, it was insisted that the plaintiff knew the wheels were to be sent to Germany, and they were packed in such a way that inspection at the port of New York could not readily be made. But, as stated, if we assume that the place at which an examination was to be made was in Germany, there is not sufficient evidence of a rejection of the goods after they arrived there, within a reasonable time; and the acceptance of the goods by the purchasers in Europe, for all the purposes of the defendants' contract with the plaintiff, would be an acceptance by the defendants themselves. If the first wheels sent had been promptly examined in Germany after an opportunity to unpack them had been given, and been rejected within a reasonable time, a different question would be presented; for then we would have to determine whether delivery as well as acceptance was concluded by the placing of the wheels on board the steamer in New York. The defendants' evidence is that, after the arrival of the first wheels in Germany, some of them were examined in a warehouse, and others in a store; and it is made to appear that quite an interval elapsed before any claim was presented that the wheels were not made in conformity with the terms of the contract. This evidence is insufficient to show that the goods were not accepted. The rule already referred to is thus stated in the syllabus in Mason v. Smith, 130 N. Y. 474, 29 N. E. 749:

"A purchaser receiving goods under an executory contract of sale, in order to preserve his right to rescind, must examine the goods within a reasonable time after receipt, and, if they are found not to conform to the contract as to quality or kind, promptly rescind, either returning or offering to return the goods."

In the present case we think there was not, strictly speaking, a sale by sample, or a contract with a warranty, which survived acceptance; and, applying the rule quoted, it is evident that the defendants' failure to prove that, after delivery and the opportunity to examine, they then returned or offered to return the wheels, is fatal to a recovery for defects or variations which were open and visible to inspection. The counterclaims do not, therefore, furnish a ground of recovery against the plaintiff; and our conclusion is that the evidence was insufficient, in any point of view, to defeat the plaintiff's claim.

The exceptions should be overruled, and the motion for a new trial denied, and judgment ordered for the plaintiff, with costs. All concur.