A. & S. HENRY & COMPANY, Limited, Respondent, *v.* JAMES TALCOTT, Appellant.

SALES — WHETHER SALE OF GOODS IS BY SAMPLE OR OTHERWISE IS FOR THE JURY TO DETERMINE. Whether a sale be by sample or not is a question of fact for the jury to find from the evidence in each case; and to authorize a jury to find such a contract the evidence must satisfactorily show that the parties contracted solely in reference to the sample exhibited; that they mutually understood that they were dealing with the sample as an agreement or understanding that the bulk of the commodity corresponded with it; or, in other words, the evidence must be such as to authorize the jury under all the circumstances of the case to find that the sale was intended by the parties as a sale by sample.

*Henry & Co.* v. *Talcott,* 71 App. Div. 616, reversed.

(Argued May 14, 1903; decided June 9, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 18, 1902, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederic R. Kellogg* for appellant. The learned court below erred in dismissing the counterclaim for damages arising from breach of the alleged warranty by sample, and erred in excluding the evidence offered by the defendant on this point. (*Bierne* v. *Dord*, 5 N. Y. 99; *Zabriskie* v. *R. R. Co.*, 131 N. Y. 78; *Gurney* v. *R. R. Co.*, 58 N. Y. 364; *Bradford* v. *Manley*, 13 Mass. 144; *Hargous* v. *Stone*, 5 N. Y. 73; Mechem on Sales, § 1320; Anson on Cont. [9th ed.] 18; *Brigg* v. *Hilton*, 99 N. Y. 517; *Kent* v. *Friedman*, 101 N. Y. 616; *I. W. Co.* v. *G. M. Co.*, 65 App. Div. 238; *Smith* v. *Coe*, 55 App. Div. 585; 179 N. Y. 162; *Mody* v. *Gregson*, L. R. [4 Exch.] 149.) The rulings of the court below excluding evidence relating to the second counterclaim and dismissing the counterclaim were likewise erroneous. (*E. S. Co.* v. *Andrew*, 33 N. Y. S. R. 125; *Soltau* v. *Rubber Co.*, 12 Misc. Rep. 138; *Toplitz* v. *Bridge Co.*, 20 Misc. Rep. 580; *Bock* v. *Healey*, 8 Daly, 156; *Bailey* v. *W. V. Ry. Co.*, 18 Barb. 112; *Roby* v. *Reynolds*, 48 N. Y. S. R. 187; *Cory* v. *T. Co.*, L. R. [3 Q. B.] 190; *Sneed* v. *Foord*, 28 L. J. Q. B. 178; *Elbinger* v. *Armstrong*, L. R. [9 Q. B.] 473; *Bagby* v. *Walker*, 68 Md. 244.)

*Harold Nathan* and *Edgar M. Leventritt* for respondent. There was no sale by sample. (*Hargous* v. *Stone*, 5 N. Y. 73; *Gurney* v. *A. & G. W. Ry. Co.*, 58 N. Y. 358; *Smith* v. *Coe*, 170 N. Y. 162; *Tryon* v. *Plumb*, 20 App. Div. 530.) There was no warranty that survived the acceptance of the goods. (*Waeber* v. *Talbot*, 43 App. Div. 180; 167 N. Y. 48; *Mason* v. *Smith*, 130 N. Y. 474; *Reed* v. *Randall*, 29 N. Y. 358; *G. M. Co.* v. *Allen*, 53 N. Y. 515; *C. I. Co.* v. *Pope*, 108 N. Y. 232; *Couston* v. *Chapman*, L. R. [2 Scotch App.] 250; *Schmitzler* v. *Kelly*, 21 Misc. Rep. 327; *Smith* v. *Coe*, 55 App. Div. 585; 170 N. Y. 162; *Tryon* v. *Plumb*, 20 App. Div. 530; *Dounce* v. *Dow*, 64 N. Y. 411.) The trial court properly ruled, as matter of law, that the correspond-

ence offered in evidence did not show a collateral warranty. (*Smith* v. *Coe*, 170 N. Y. 171; *Beirne* v. *Dord*, 5 N. Y. 95; *S. Nat. Bank* v. *Weston*, 172 N. Y. 250.)

VANN, J.   The plaintiff sued to recover a balance due upon an account for merchandise sold and delivered to the defendant, who answered, alleging, among other things, a counterclaim for breach of an express warranty that the goods, which were to be manufactured for the defendant for the purpose of sale to his customers, should be equal to certain samples furnished by the plaintiff.   The defendant further alleged that he sold the goods with like warranty, and was compelled to make allowances to his customers on account of defects, and that he sustained other damages owing to the failure of the goods delivered to correspond in quality to the samples exhibited.   The reply contained divers admissions and denials, as well as an averment that all the goods were received, accepted and retained by the defendant.

Upon the trial there was no controversy as to the plaintiff's claim, but the strife was over the effort of the defendant to establish his counterclaim.   It appeared that between December 19th, 1894, and March 17th, 1897, the plaintiff, a foreign corporation doing a jobbing business at Bradford, England, sold and delivered to the defendant, a jobber in the city of New York, certain fancy worsteds at the agreed price of £20,000 and upwards, of which over £18,000 has been paid, leaving a balance, when reduced to American currency, of $13,182.07, besides interest.

The facts relied upon by the defendant were established by the testimony of Mr. Chamberlain, his agent, who saw the plaintiff at Bradford in October, 1894, when he received from it certain "small reference samples" about two inches square, woven on a small loom to "show the pattern and the weave and the number of ticks and ends in the cloth."   The sample loom is used "for weaving patterns" and makes "a more perfect piece of cloth than" the broad loom on which the piecegoods, about 56 inches wide, are woven for the

market. " These small patterns," as Mr. Chamberlain further testified, "represented the style and pattern. They did not always represent the weight of the goods to be made. The use intended for these sample patterns was simply to show the design and the character of the cloth, the color and general appearance."

The samples, which were numbered separately, were brought to New York by Mr. Chamberlain and subsequently larger samples of the same kind bearing the same numbers and woven on the same loom were ordered and paid for by the defendant for distribution among his customers. While ordered at the same time and in the same way as the main body of the goods they were to arrive sooner.

The goods in question were all purchased by mail and the contract was made by a written order of the defendant and a written confirmation thereof by the plaintiff. The order contained nothing but the number of the sample, the weight per yard, the number of pieces, the price and the time of delivery in the city of New York. The confirmation simply repeated the order, described the goods as " Fancy Worsteds," extended the time of delivery somewhat in most instances, and in one instance increased the price also. The goods had not been manufactured when the orders were given and the defendant never had an opportunity to see them until they arrived in New York. They were not made by the plaintiff, who ordered them of the manufacturers for sale to its own customers. They were shipped at different times, extending over a period of nearly three years, and were all accepted, retained and sold by the defendant. There was no warranty, except such as may be inferred from the foregoing facts and no claim of artifice or fraud to induce either the sale or acceptance. Some of these facts were not actually proved, but as exceptions were taken to the exclusion of the offer to prove them, they are regarded as proved for the purpose of reviewing the disposition of the case by the trial court.

The defendant claims that the goods were defective in quality, but he was not allowed to show the nature of the

defects, whether they were latent or patent, or could be dis-covered on inspection.   He attempted to show the defects, as well as the actual damage he sustained, but the evidence was not received because the trial judge was of the opinion that the sale was not made by sample and that there was no warranty that survived acceptance.   The counterclaim was dismissed, not on the merits, but for insufficiency of proof, and a ver-dict was directed for the amount of the plaintiff's claim.   The Appellate Division unanimously affirmed the judgment entered accordingly, and the defendant now comes here.

Upon a sale by sample there is an express warranty that the goods are equal in quality to the sample furnished.   " It amounts to an undertaking on the part of the seller with the purchaser that all the goods are similar both in nature and quality to those exhibited." (*Beirne* v. *Dord*, 5 N. Y. 95, 98.) It is sometimes said that the warranty is implied, although the effect of an express warranty is given to it, but more accu-rately it is express, the affirmation being made by the sample itself silently asserting the qualities of the bulk it represents. The sample must be shown as an inducement to the sale, must be connected with the contract by the circumstances attending the sale and must be intended by the parties as the basis of the sale. (*Gallagher* v. *Waring*, 9 Wend. 20; affirmed *sub. nom. Waring* v. *Mason*, 18 Wend. 425; Story on Contracts, § 540; 15 Am. & Eng. Encyc. 1226; Benjamin on Sales, § 667.)

The seller need not state that the bulk of the goods corre-sponds with the sample, as the warranty is "implied in fact," and is express, for it must be found as a fact that the parties intended the sale to be made by sample, and that the exhibi-tion of the sample was regarded by them as in effect an affirma-tion as to the quality of the articles sold. (*Gurney* v. *Atlantic & G. W. Ry. Co.*, 58 N. Y. 358, 364; Keener on Quasi-Contracts, 5.)   In the absence of fraud the warranty does not cover latent defects, unless the seller is the manufac-turer, when it may extend to latent defects growing out of the process of manufacture.   If upon delivery the goods fall

below the quality of the sample the buyer may either reject them or may accept and sue for damages upon the warranty. (*Zabriskie* v. *Central Vt. R. R. Co.*, 131 N. Y. 72; *Kent* v. *Friedman*, 101 N. Y. 616; *Day* v. *Pool*, 52 N. Y. 416.)

The rule is the same whether the goods are in existence at the time of the contract of sale or are to be manufactured, although it is sometimes said that such a sale is not technically one by sample. (*Brigg* v. *Hilton*, 99 N. Y. 517; *Gurney* v. *Atlantic & G. W. Ry. Co.*, *supra*.)

The mere exhibition of a sample is not of itself an agreement to sell by sample, and it is usually a question of fact for the jury to decide whether, under all the circumstances, the parties intended that the sale should be made in that way. Even if the word "sample" is used in a written order for goods to be manufactured, the sale is not by sample if the order contains minute specifications and descriptions, involving a great number of changes, variations and differences between the article to be made and the sample shown. (*Smith* v. *Coe*, 55 App. Div. 585; affirmed, 170 N. Y. 162.)

A sale, however, may be made partly by description and partly by sample, and in that event the goods must correspond to the description in the respect covered thereby and to the sample in other respects. (*Bach* v. *Levy*, 101 N. Y. 511, 514; *Gould* v. *Stein*, 149 Mass. 570; Burdick on Sales, 95; Benjamin on Sales [7th ed.], 684.)

If the goods, when delivered, do not equal the sample, the buyer need not return them in order to recover for the breach of warranty, although an offer to return is necessary if he wishes to rescind the sale and sue for the amount paid in advance of delivery.

The chief reason for exempting sales by sample from the cardinal rule of *caveat emptor* is that the buyer has no chance to protect himself by an examination of the commodity sold. When the goods are in the presence of the parties at the time of the sale and an adequate examination can be made, even if it is inconvenient or difficult, according to the weight of authority the sale is not to be regarded as made by sample in

the absence of an express agreement to that effect. Parties can make their own bargains and whatever they actually agree to they must abide by, but when nothing is said or written upon the subject and the buyer has ample opportunity to examine and inspect for himself and to thus learn the quality, in the absence of fraud, there is no warranty, even if samples are exhibited by the seller, because the parties stand upon an equal footing and the interests of commerce require that the rule of *caveat emptor* should apply. Under such circumstances, if the buyer distrusts his own judgment he should exact a collateral warranty, made in express terms, and not rely upon the silent affirmation of the sample; otherwise, if an examination is practicable, he must make it at his peril, for if no advantage is taken of him through misrepresentation or fraud, the law requires him to look out for himself. We thus reach the foundation upon which sales by sample rest, for it is the absence of an adequate opportunity for inspection that excepts such sales from the rule of *caveat emptor*. As was said by the Supreme Court of the United States: "One of the main reasons why the rule does not apply in the case of a sale by sample, is because there is no opportunity for a personal examination of the bulk of the commodity which the sample is shown to represent." (*Barnard* v. *Kellogg*, 10 Wall. 383, 388.) "Ordinarily, if the buyer had no opportunity to inspect the goods and a sample is exhibited at the sale and offered him for examination, the courts would presume that it was a sale by sample * * *." (Tiedeman on Sales, § 188.) This presumption is not conclusive, but "may be rebutted by other facts, as, for example, when the seller refuses to sell by the sample." (Id.)

Did both parties to this action understand that the defendant was to be his own judge of the quality of the cloths ordered? How could he be when he had no opportunity to form a judgment by seeing the goods themselves? He had nothing to guide him in making the order except the samples furnished by the plaintiff for some purpose. For what purpose had he, acting as a reasonable and prudent man, the

right to infer that the plaintiff furnished them? For what purpose did it in fact furnish them? What inference in this regard is warranted by the circumstances surrounding the parties when the contract was made? Was reliance properly placed upon the samples as to all characteristics of the bulk of the goods, except weight and finish? Did the fact that the sample did not stand for weight or finish and that the weight was specified in the order, prevent the transaction from being a sale by sample as to the characteristics covered by the samples, especially since it does not appear that there was any difference in weight or finish between the goods and the sample? What was the real intention of the parties?

The plaintiff had furnished the defendant with samples, which to some extent, though not in all respects, represented the quality of the goods, not yet in existence, which it offered to sell. The samples did not stand for weight, smoothness or finish, but they showed the pattern, weave, number of ticks and ends in the cloth, the design, character, color and general appearance. They were known as reference samples and were so numbered as to make reference thereto easy and convenient. The defendant could not see the goods for they were in process of manufacture at a distant place. The parties were widely separated and conducted their negotiations by mail. The defendant mailed an order to the plaintiff, specifying the weight, quantity, price and time and place of delivery, but not describing the goods in any way, even by name, except by referring to the numbers of the various samples. In confirming the order the plaintiff also referred to the sample numbers, added the descriptive term "Fancy Worsteds," changed the price in one instance and the time of delivery in most, and thus the contract was made, the defendant having ratified the changes by not objecting thereto and by insisting upon earlier deliveries. No demand was made for a collateral warranty, nor was any extrinsic fact shown indicating that the defendant expected, or that he was expected by the plaintiff, to rely upon his own judgment, or purchase at his own risk.

We think a question of fact arose for the jury to decide upon all the evidence, whether the parties intended a sale by sample or a sale by description. While there was no conflict in the evidence, the facts proved permitted different inferences, and hence action by the jury was required, which was not the case in *Smith v. Coe* (170 N. Y. 162, 171), cited by the respondent. The primary question is, what did the parties intend, for there was no sale by sample unless the parties so intended. The intention is to be gathered from the order, the confirmation thereof and the circumstances surrounding the parties at the time the contract was made.

On the one hand it is contended that the defendant, by referring to the sample number, made the sample a part of his order, the same as if it had been actually attached thereto; that he virtually wrote to the plaintiff to send him cloths of a specified weight, but as to the pattern, weave, number of ticks and ends, character, color and general appearance, like the sample annexed; that the plaintiff, knowing that the defendant could not inspect the goods and that he had not asked for a collateral warranty, confirmed the order by repeating its language *in hæc verba*, and inserting therein the term " Fancy Worsteds; " that the defendant might have shown, had he been permitted to go into the subject, that the goods delivered varied from the samples in one or even all of the qualities for which the sample stood as a standard; that he had nothing to guide him in making the order except the samples furnished by the plaintiff, and that fair dealing required the inference that a sale by sample was intended, as otherwise the use of the sample would be without meaning.

On the other hand, the plaintiff contends that the sample was furnished merely for the purpose of description and as a substitute for the many details of a written description; that the object was to enable the defendant to form a judgment, the same as if the cloth had been described by written words, without reference to the sample; that neither the word *sample* nor the word *warranty* was used during the negotiations; that both parties knew that the samples represented neither

weight nor perfection in weaving ; that they were intended to facilitate correspondence, not to create a warranty, and that they amounted to an expression of opinion rather than an affirmation of quality.

We adopt and apply to this case the rule laid down, in substance, by the Court of Errors and specifically by this court, as follows : " Whether a sale be by sample or not is a question of fact for the jury to find from the evidence in each case ; and to authorize a jury to find such a contract the evidence must satisfactorily show that the parties contracted solely in reference to the sample exhibited.   That they mutually understood that they were dealing with the sample as an agreement or understanding that the bulk of the commodity corresponded with it ; or, in other words, the evidence must be such as to authorize the jury under all the circumstances of the case to find that the sale was *intended* by the parties as a sale by sample." ( *Waring* v. *Mason,* 18 Wend. 425, 434; *Beirne* v. *Dord,* 5 N. Y. 95, 99.)

We refrain from expressing any opinion as to the other questions discussed before us, because the facts relating thereto were so imperfectly developed as to make our opinion of little use upon the new trial which we deem it our duty to order.

The judgment should be reversed and a new trial granted, with costs to abide the event.

O'BRIEN, BARTLETT, HAIGHT, MARTIN, CULLEN and WERNER, JJ., concur.

Judgment reversed, etc.