J. L. OWENS COMPANY, Appellant, v. LELAND FARMERS ELEVATOR COMPANY, Appellee.

**SALES:** Express and Implied Warranty in Same Sale.  An *implied* warranty that a grain separator is reasonably fit for the purpose for which it is sold may exist even though there is an *express written* warranty as to (a) capacity and (b) freedom from waste and clogging.

**SALES:** Warranties—Sale by "Description."  An implied warranty of reasonable fitness attends the sale of an article sold "by description," even though the sale is accompanied by express written warranties not inconsistent therewith.

**SALES:** Warranties—Written Excludes Oral Warranty.  Specific *written* warranties exclude specific *oral* warranties.  So held where the written warranties covered (a) capacity and (b) freedom from waste and clogging, and where the buyer sought to show a specific *oral* warranty that the machine would work automatically.

**SALES:** Warranties—Nonimplied Warranty.  The law will not imply a warranty that a machine will work automatically.

**SALES:** Acceptance as Jury Question.  Evidence relative to the buyer's notification to the seller of the unsatisfactory condition of a machine, and the seller's attempt to remedy the defects, reviewed, and held to present a jury question on the issue of acceptance.

*Appeal from Winnebago District Court.*—M. F. EDWARDS, Judge.

DECEMBER 13, 1921.

ACTION to recover the purchase price of personal property. Counterclaim by defendant.  Judgment on the counterclaim. Plaintiff appeals.—*Reversed*.

*Tom Boynton* and *Francis B. Hart,* for appellant.

*Thompson, Loth & Lowe,* for appellee.

STEVENS, J.—Plaintiff, appellant herein, a corporation having its principal place of business at Minneapolis, Minnesota, commenced this action against the defendant, appellee herein, a corporation having its principal place of business at Leland, Iowa, to recover the purchase price of a Dual Marquis machine, which was sold to the defendant upon written order, with express warranties. Plaintiff's petition is in the usual form of an action of the character stated, and included a copy of the signed order, with the warranties printed on the reverse side thereof. The defendant in its answer set up the breach of the express warranties and of certain implied warranties; that the sale was not completed for the reason that defendant refused to accept the machine; and that it rescinded the contract within a reasonable time, and offered to return the machine. The signed order, among other things, provided as follows:

"If the machine does the work according to your guarantee on back of this order, we will pay for it cash within 10 days after date of invoice, in which event we shall be entitled to a discount of 5 per cent; otherwise the terms are to be 30 days net from date of invoice. Special arrangements for note settlement may be made, bearing 8 per cent interest from date of invoice at your approval.

"If we are unable to make this cleaner work to our satisfaction through our operation, we are to notify you and give you an opportunity to have your representative come and show us how to run the machine; whereupon definite settlement shall be made, rendering it unnecessary for your representative to again appear, unless so requested and at our expense. In the event that your representative is unable to make this machinery operate according to the guarantee on the back of this order, we are to notify your office at Minneapolis, Minnesota, stating, in substance, the difficulty, and you are to advise us what disposition is to be made."

The express warranties printed on the back of the signed order are, in substance, as follows: That the machine would be

made of good material, made by expert workmen in a workmanlike manner for elevator and warehouse wear; that it would be substantial and durable; that it "will separate an average mixture of wild and tame oats, in good No. 1 or No. 2 wheat, to from ½ to 1½ lbs. to the bushel once through. On a mixture of from 8 to 10 lbs. up to 20 or 30 lbs. of wild and tame oats in wheat, the machine will reduce it to from 1½ to 3 lbs. once through, depending upon the conditions of the grain, and that in making the above separation there will be no loss of wheat through suction, tailing, or otherwise." The warranty also provides that, if appellant's special barley gang is used, the machine will "also reduce a mixture of wild and tame oats in barley to a degree of perfectness within 1½ to 2½ lbs. of what is guaranteed above it will do on the same mixture in wheat;" that it would have a capacity of from 600 to 800 bushels per hour of wheat and barley; that "the separating sieves will not clog by even the heaviest mixture of wild oats, kingheads, or thistles;" and that "the above capacities are given on the separating gangs. If scalping or receiving cleaning only is done, the capacities can be increased to suit, and are only limited by the size sieves which are used."

The court did not, in its instructions to the jury, define the term warranty, either express or implied; and the only statement of the warranties which defendant alleged were violated was in the court's statement of the issues.

The issues as to the alleged breach of warranties submitted to the jury by the court were substantially as follows: (1) That the machine did not have the warranted capacity for wheat or barley, and that its capacity did not exceed 250 bushels per hour; (2) that in its operation there was an unreasonable loss of wheat through suction, tailing, and otherwise, and that a great amount of wheat was lost and wasted by being carried out with the dirt and waste from the machine; (3) that the operating sieves clogged at frequent intervals, interfering with the continuous operation of the machine; (4) that the said machine was not reasonably adapted to the purpose for which it was ordered, and that it required the constant attention of one and the frequent attention of two men at all times during its operation; (5) that the apparatus into which the grain is fed is not

automatic, and will not adjust itself after being set, but the feed is so constructed as to require frequent manual adjustment; that it is likely to clog and overflow, thereby clogging the machine and wasting the grain.

The first three of the warranties above referred to are treated by counsel in argument as coming within the specific terms of the written instrument. The others are referred to as implied warranties. Before proceeding to a discussion of the questions presented for review, we will make a brief general statement of the record. The order is dated September 30, 1918, and was obtaind by A. C. Weisman, appellant's salesman, at a meeting of appellee's board of directors. The cleaner was delivered at appellee's elevator December 23d following. Mr. Weisman undertook to at once install and test the capacity of the machine. It did not operate to the satisfaction of defendant's manager and board of directors. One or more representatives of plaintiff at different times subsequently visited Leland, tested the machine, and sought to demonstrate its capacity and efficiency to the satisfaction of the purchaser. The evidence tended to show that the sieves clogged; that its operation required constant attention; that it was wasteful; and that its capacity was much less than 600 or 800 bushels of wheat per hour. Plaintiff offered evidence to the effect that the grain used in making the test was wet, sprouted, and wholly unsuitable therefor. The testimony upon this point is in conflict, the witnesses for defendant testifying that the grain was not damp or sprouted to such an extent as to reasonably interfere with the successful operation of the machine to its full capacity.

The evidence on behalf of the defendant further tended to show that, before the order was signed, plaintiff's salesman was informed by members of defendant's board of directors that they employed only a manager and a helper in the elevator; that they did not desire to purchase a machine that would require constant attention to operate it, or one that would make it necessary to employ other and further help; that plaintiff's salesman then stated to the officers of defendant that the machine in question operated automatically; and that it would not be necessary for defendant to employ other or further help; that it was self-adjusting, and would require only occasional attention.

Counsel for appellant, at the outset of the trial, interposed a general objection to any testimony as to conversations, statements, or representations by plaintiff's salesman, or of negotiations between the parties occurring prior to the signing of the order, upon the ground that same was merged in the written instrument. These general objections were overruled by the court.

The propositions relied upon by appellant for reversal are:

(a)   The admission of parol evidence of conversations and negotiations between the parties, prior to the signing of the written order; the refusal to charge the jury that same were merged in the written instrument; the submission to the jury of the issue of implied warranties.

(b)   The admission of testimony to prove the alleged representations and statements of Weisman 'that the machine was self-adjusting and operated automatically, and that it would not be necessary for appellee to employ other or further help in case it was installed in its elevator, for the reason that same constituted an express oral warranty, which could not be shown or added to the express warranties; and the submission to the jury of the issue of implied warranty, based upon the above representations.

(c)   That defendant received, accepted, and retained the machine for an unreasonable time, with full notice of its defects, without notice to appellant of such defects, at its office in Minneapolis, Minnesota; and that, by reason thereof, it waived its right of rescission.

These propositions are presented in the record and in argument under various assignments; but they are, in substance, the matters relied upon for reversal. Appellant, at the close of plaintiff's testimony, moved for a directed verdict, upon the ground that it affirmatively appeared from the evidence that the defendant had failed to comply with the terms of the written order by giving notice and by rescinding within a reasonable time. This motion was overruled. The case was tried below and is argued in this court upon the theory that the warranted capacity of the machine is not limited to its operation in cleaning No. 1 and No. 2 wheat. The express warranty as to these grades of wheat apparently has nothing to do with the warranted capacity of the machine per hour. Both the parties

agree that no No. 1 or No. 2 wheat is grown in the vicinity of Leland, and Weisman admitted that he knew that fact at the time the written order was signed.

I.   It will be observed that the machine was expressly warranted to have a specified capacity, and warranted in various other particulars.   The law is well settled in this state that a warranty may be implied that the machine is reasonably fit and suitable for the purpose for which it is sold, notwithstanding the fact that the written contract contains express warranties (*Bucy v. Pitts Agr. Works,* 89 Iowa 467; *Western Elec. Co. v. Baerthel,* 127 Iowa 467; *Loxtercamp v. Lininger Imp. Co.,* 147 Iowa 29; *American P. P. Co. v. American P. A. Co.,* 172 Iowa 139; *Sturtevant Co. v. Le Mars Gas Co.,* 188 Iowa 584; *Alpha Checkrower Co. v. Bradley & Co.,* 105 Iowa 537; *Pew Co. v. Karley & Titensor,* 154 Iowa 559; *Ideal Htg. Co. v. Kramer,* 127 Iowa 137; *Blackmore v. Fairbanks, Morse & Co.,* 79 Iowa 282); also, that express warranties provided in a written contract of sale cannot be added to or varied by parol evidence.   *Nichols, Shepard & Co. v. Wyman,* 71 Iowa 160; *Blackmore v. Fairbanks, Morse & Co.,* supra; *Bucy v. Pitts Agr. Works,* supra; *Four Traction Auto Co. v. Hurni,* 156 Iowa 725; *Western Elec. Co. v. Baerthel,* 127 Iowa 467; *Electric Storage Bat. Co. v. Waterloo, C. F. & N. R. Co.,* 138 Iowa 369; *Four Traction Auto Co. v. Hurni,* 170 Iowa 476.   Also, that, where an article is purchased by description of the seller, there is an implied warranty that the goods will correspond with the description furnished.   *Gould v. Stein,* 149 Mass. 570 (22 N. E. 47); *Henry & Co. v. Talcott,* 175 N. Y. 385 (67 N. E. 617); *Lissberger v. Kellogg,* 78 N. J. L. 85 (73 Atl. 67); Section 14 of the Uniform Sales Act, Chapter 396, Acts of the Thirty-eighth General Assembly.   Section 14 did not, however, go into effect until after the order in question was signed. The record discloses in this case that plaintiff's salesman, who took the order, was fully informed by the officers of defendant as to the kind of machine desired, the work it would be required to perform, and also as to the quality and grades of wheat grown in the vicinity of Leland, and that would be likely to be cleaned by the machine.   The implied warranty of fitness for the use intended is not necessarily in conflict with the express warranties.

1. SALES: express and implied warranty in same sale.

There was ample evidence from which the jury might well have inferred that the machine was wholly unsuitable for the purpose intended.  Even if it were conceded that the express warranties covered all matters complained of by defendant, the submission to the jury of the implied warranty of reasonable fitness could not have been prejudicial to appellant.  As stated above, the evidence tended to show that the sieves clogged; that the machine was wasteful; that it at no time reached its warranted capacity; that it wholly failed to come up to the express warranties as to these matters.

The question whether the wheat used in making the test was reasonably fit for the purpose was a question of fact for the jury.  Defendant was not required, under the written order, or under the warranties printed on the back thereof, to furnish No. 1 or No. 2 wheat in making the test of capacity and fitness.  The designated capacity of the machine is not based upon these grades of wheat.  None of the officers of defendant had ever seen a Dual Marquis machine, and appellant's salesman was informed that they would have to rely wholly upon his representations.  He thereupon gave a description thereof orally, and also exhibited and explained a large, illustrated circular published and circulated by appellant, fully describing the machine.  The submission to the jury of the issue of implied warranty as to reasonable fitness affords no ground of reversal.

2. SALES: warranties: sale by "description."

II.   The court also submitted the further issue of an implied warranty based upon the alleged conversation between defendant's board of directors and Weisman, prior to the signing of the order, that they desired a machine that would so operate as not to require constant attention or the employment of additional help, and that Weisman stated and represented that the machine was self-adjusting and automatic in its operation.  The submission of this issue was challenged by proper objection to the admission of the testimony to prove same, and by exception to the court's instructions.

3. SALES: warranties: written excludes oral warranty.

Evidence of oral express warranties was inadmissible.  Defendant had no right to show by parol that plaintiff's salesman warranted the machine to be self-adjusting and automatic in its

4. SALES: war-
ranties: non-
implied war-
ranty.

operation; and further, that it required only occasional attention; and that the employment of further help would not be necessary, on account of the operation of the machine. The law would not imply a warranty to that effect. The effect of this evidence, if any, was to establish a warranty by parol in addition to those contained in the written agreement. This is forbidden. (See the authorities cited supra.)

The answer contained no charge of fraud. It may be that Weisman falsely represented the machine to be self-adjusting and automatic in its operation, but advantage cannot be taken thereof by appellee upon the theory of an implied warranty. The evident theory of counsel for appellee is that, as plaintiff's salesman was fully informed that the officers of defendant desired only to purchase a machine that was self-adjusting and automatic in its operation, the law would imply therefrom that the machine sold was so constructed. These matters do not go to the question of implied fitness. We find nothing in the written order or warranties printed on the back thereof indicating that defendant desired to purchase a self-acting and automatic operating cleaner. If such was the understanding of the parties, it should have been included in the contract. We think the submission of this issue to the jury was both erroneous and prejudicial.

III. The only remaining point requiring particular attention is the contention of appellant that notice that the machine was unsatisfactory was not given within a reasonable time after

5. SALES: ac-
ceptance as
jury question.

it was delivered and installed in the defendant's elevator, and that it did not specify, in substance, the defects in the machine or the difficulty in operating it. We think this contention without substantial merit. Defendant was not required by the contract to notify appellant in writing, but it was required to notify it at its office in Minneapolis. The agreement on the part of defendant was to pay for the machine within ten days, if it worked according to the warranties printed on the back of the order. The evidence fully justified the finding of the jury that the machine at no time operated to the satisfaction of defendant, or came up to the admitted warranties.

Plaintiff continued to send its representatives to Leland, to demonstrate the machine and to make it operate as warranted. Samuel L. Kuehnle, who visited Leland February 14, 1919, testified that he was an expert in the employ of plaintiff; that he demonstrated the machine; and that, in his judgment, it showed a capacity of at least 600 bushels per hour. He attributed the failure of the machine to do perfect work to the damp, sprouted condition of the wheat. The evidence as to the success of the test made by him is in conflict. Kuehnle, who was accompanied by Weisman, was informed by appellee's representative that the machine would not be accepted; that it was not satisfactory; and that it did not comply with the warranties. Kuehnle was the general agent of appellant. Other representatives of appellant had previously visited Leland and tested the machine without success—at least such is the showing made by appellee. The manager of appellee testified that he cleaned one car of wheat of 1,000 bushels, and that about 12 hours were consumed in the operation; that the sieves clogged; that the machine carried the grain over with the dirt and waste, and did not operate satisfactorily. Some time after Mr. Kuehnle visited Leland on February 14th, Mr. Holland, the president of defendant company, had a conversation over the telephone with someone at appellant's office in Minneapolis, during which he stated that the machine was unsatisfactory, and would not be accepted or paid for. On June 23, 1919, the defendant notified appellant by letter at its office in Minneapolis that its board of directors had decided to return the machine, and asked for shipping directions. No objection was made by appellant in reply to the form of this notification, or that it was insufficient: but appellant stated that it was not interested in what defendant did with the machine; that it belonged to it, and its officers could do with it as they pleased; but that, if it was shipped to Minneapolis, it would not be accepted. The question whether the defendant forfeited its right to rescind, by failing to notify appellant at once of the difficulty with the machine, instead of waiting, pending the efforts of appellant to demonstrate its capacity and fitness, was a question of fact, to be submitted to the jury. We cannot, as a matter of law, say that defendant accepted the machine, or that there was an unreasonable delay in notifying the plaintiff at its office

in Minneapolis that the machine was not satisfactory, when all of its defects and claimed unfitness were already well known to appellant, which was trying to adjust it to comply with the admitted warranties. *Bamberger v. Burrows,* 145 Iowa 441; *First Nat. Bank v. Dutcher,* 128 Iowa 413; *Laird v. Cole,* 121 Iowa 146; *Reeves & Co. v. Younglove,* 148 Iowa 699.

Other questions discussed by counsel are without merit, or are not likely to arise upon a retrial of this case; and therefore we omit discussion thereof. For the reason already indicated, the judgment of the court below must be and is—*Reversed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.