(92 App. Div. 187.)

### IDEAL WRENCH CO. v. GARVIN MACHINE CO.

(Supreme Court, Appellate Division, First Department.    March 11, 1904.)

1. CONTRACTS—MANUFACTURED ARTICLES—BREACH—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action for breach of contract to manufacture and deliver wrenches of a certain kind and quality, evidence *held* sufficient to justify a verdict finding the breach.

2. SAME—CONSTRUCTION—CONTRACTS TO MANUFACTURE.

A contract by which defendant agreed to manufacture and deliver wrenches equal in every way to a model submitted, but which was to be improved on by defendant, the wrenches to be made according to the improved model, was a contract to manufacture and deliver, and not a sale by sample.

3. SAME—BREACH—DAMAGES—INFERIOR QUALITY—ACCEPTANCE—EFFECT.

For breach of a contract to manufacture and deliver articles corresponding with a given model the vendee cannot recover damages because of the inferior quality of the articles delivered, in so far as they have been accepted by him, but he can recover for articles paid for, but returned to the manufacturer as inferior.

**4. SAME—FAILURE TO MANUFACTURE.**

For failure to manufacture and deliver articles according to contract, the vendee may recover in damages the difference between the market value of the articles, if they have any market value, and the contract price to be paid the manufacturer; or, if they have no market value, then the difference between the value of the articles to the vendee, if they had been delivered, and the price that he was to pay therefor.

**5. SAME—RECOVERY OF DEPOSITS.**

On failure to manufacture and deliver articles according to contract, the vendee may recover back a sum advanced by him to be applied on the articles which were to be last delivered.

**6. SAME—COMPLIANCE WITH CONTRACT—QUESTION FOR JURY.**

Evidence *held* to present a question for the jury as to whether tools manufactured by defendant in order to make wrenches for plaintiff's assignor, and which plaintiff's assignor was to pay for, were made in compliance with the contract.

**7. SAME—RIGHT TO DAMAGES.**

Where tools manufactured by defendant in order to make wrenches for plaintiff's assignor, and which plaintiff's assignor was to pay for, were not made in compliance with the contract, and were not accepted by plaintiff's assignor, though they had been paid for, plaintiff was entitled to recover the amount which had been paid for the tools.

Laughlin and Hatch, J. J., dissenting.

Appeal from Trial Term, New York County.

Action by the Ideal Wrench Company against the Garvin Machine Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed on condition. See 72 N. Y. Supp. 662.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Henry Schoenherr, for appellant.

Herbert Smyth, for respondent.

INGRAHAM, J. The action is to recover damages caused by the breach of a contract for the manufacture by the defendant of a machine called the "Ideal Wrench." Upon an appeal from a judgment entered upon a dismissal of the complaint on a former trial, it was held that there was a breach of the contract by the defendant, which, in the absence of other proof of damage, authorized the recovery of $500 deposited with the defendant, which was to be applied on the last payment. It was also intimated in the opinion that the plaintiff might be entitled to recover other damages, depending on the proof upon a new trial. 65 App. Div. 235, 72 N. Y. Supp. 662. Upon the new trial the court submitted the case to the jury, who found a verdict for the plaintiff for $2,000.

The contract sued on, dated March 6, 1897, was between Walter C. Stokes (plaintiff's assignor) of the first part, and the defendant of the second part. It provided that, for and in consideration of the sum of $500, the receipt of which was acknowledged, the defendant agreed to "build and deliver" 10,000 wrenches, known as the 'Ideal Pattern,' a mold of which was to be furnished Stokes; that 7,500 of said wrenches, blue finish, were to be manufactured, at 40 cents each, and

¶ 4. See Sales, vol. 43, Cent. Dig. §§ 1182, 1194.

2,500, full nickel finish, at 50 cents each, payment for which was to be made within 30 days of delivery, less $500 advanced, which was to be applied on the last payment. The wrenches were to be made in a first-class manner, in every way equal to that of the model submitted. The complaint alleges the making of this agreement; the assignment of the contract, and of all Stokes' rights and claims to damages thereunder, to plaintiff; that Stokes and the plaintiff have made all payments and performed all the acts which by the terms of the said contract were to be made and performed by Stokes, but that the defendant corporation has neglected, failed, and refused to carry out said contract, or to perform the acts therein by it agreed to be performed; that the defendant has failed and refused to build or deliver any wrenches made in a first-class manner, and has failed to build or deliver any wrenches made in every way equal to that of the model, although such model was duly furnished to the defendant; that the defendant failed and refused to deliver any wrenches within a reasonable time, and not until months after the execution of said contract, although frequently and urgently requested to do so; that the defendant, after the month of May, 1897, from time to time, and at long intervals, until the month of October, 1897, delivered wrenches in small quantities, amounting in the aggregate to about 2,000 wrenches, and since said month of October, 1897, has failed, refused, and neglected to tender or deliver any wrenches meeting the requirements of said contract; that all the wrenches tendered or delivered by the defendant were weak and defective, and neither made in a first-class manner nor equal to that of said model; that large numbers of said wrenches, of the number delivered as aforesaid, were delivered in turn and distributed by said Stokes or said plaintiff, and broke with ordinary use in the hands of intending purchasers, and were returned by such purchasers to said Stokes or the plaintiff, to the great damage and detriment of their business, and the defendant failed to deliver any wrenches the parts of which were interchangeable, to the great detriment and loss of plaintiff; that by reason thereof, and of the unreasonable delay in the delivery of wrenches, the failure to deliver any wrenches in accordance with the contract, the failure and neglect to deliver more than 2,000 wrenches in all, and the failure to make the tools necessary for the manufacture of said wrenches, the defendant has caused damage to Stokes and the plaintiff.

The answer admits the making of the contract, admits that the defendant delivered to the plaintiff about 2,000 wrenches in pursuance thereof, and denies the other allegations of the complaint; and, for a separate defense, it alleges that after the execution of the contract the plaintiff's assignor requested a modification thereof, wishing all the wrenches to be full nickel wrenches; that said Stokes was there and then informed by said defendant that the defendant had already made up and caused to be cast the said 7,500 wrenches, which were to be completed in blue or plain finish, and in order to change the style of finish, and to complete them in full nickel finish instead of the blue finish, as called for by the contract, it would be necessary to grind certain parts of the wrenches so as to receive the nickel plate, and that some of the parts of the wrenches would be necessarily somewhat thinner than the sample; that thereupon the said Stokes changed the con-

tract and the said order, and directed the defendant to go on and complete the wrenches so cast, and make them up in full nickel finish instead of the blue finish, or plain finish, as called for by the contract; that the defendant, acting under the said instructions, proceeded to complete the wrenches as directed by Stokes; and that if the wrenches tendered to the plaintiff, and the wrenches so delivered, were different or in any particular varied from the samples as called for by the contract, it was not the fault of the defendant, but was the fault of the said Stokes.

Upon the trial Stokes (plaintiff's assignor) testified that prior to the making of the contract the defendant's president stated that the wrenches called for by the contract would be manufactured and delivered in six to eight weeks, and introduced in evidence a letter from the defendant, dated February 5, 1897, in which it was said: "We are in excellent shape to take hold of a job of this character, and can make deliveries in about eight to ten weeks from receipt of order." Subsequently, on the 6th of March, 1897, the contract in question was executed, and Stokes paid $500 to the defendant, and subsequently paid to defendant for the tools manufactured by it $1,500. Stokes further testified that the dates of the delivery of wrenches were May 22d, 1 wrench; May 24th, 8 wrenches; June 2d, 60 wrenches; that the first delivery in quantity was on August 6th, of 512 wrenches, and so on down to October, when it would seem that the last delivery of 500 wrenches was made; that on June 7th there were returned to the defendant 29 wrenches; that no wrenches were received from the defendant after November 9th; that neither the $500 paid upon the execution of the contract nor the $1,500 paid by the plaintiff or Stokes to the defendant have ever been repaid; that the plaintiff also paid to the defendant the net sum of $646 for the wrenches delivered. Upon cross-examination Stokes testified that he had a wooden model of the wrench at the time he went to see the defendant; that he submitted this wooden model to the defendant, who stated that they could improve upon it, and that they subsequently made an improved model, which was approved by Stokes. There was also the testimony of an engineer who tested the wrenches furnished by the defendant under this contract, and who testified to the defects and variations from the model.

There can be no question, I think, but that the verdict of the jury that there was a breach of the contract by the defendant was justified, and the only substantial question is as to the correct measure of damages. This was, I think, a contract to manufacture and deliver, and not a sale by sample. When the contract was made there were no goods in existence a sample of which was produced, and upon which a sale was made. A wooden model was produced by the plaintiff's assignor, and submitted to the defendant, upon which the contract was made. It was then understood, however, that this model was to be improved upon, and the parties contemplated that the article to be manufactured should correspond with a model to be thereafter manufactured by defendant and approved by the plaintiff's assignor. Such a model was subsequently produced by the defendant and approved, and the defendant proceeded with the execution of the contract based upon this approved model. The case of Gurney v. Atlantic & G. W.

Ry. Co., 58 N. Y. 358, discusses the rules applicable to a contract of this kind, and the rights and obligations of the respective parties.   It was there said:

"The substance of the arrangement was that Naylor & Co. agreed to procure to be manufactured a quality of frogs, to correspond with the pattern, and deliver the same to the railway company as desired; in other words, it was an executory contract for the manufacture and delivery of certain articles of personal property of a specified quality and description.   It was not strictly a sale by sample.   Such a sale contemplates that the goods are in esse, that the sample is taken from the bulk, and that the latter is equal in quality to the sample.   This is sometimes called an implied warranty, but it is more properly an express warranty.   It amounts to an affirmation that the specimen is a fair sample of the bulk of the commodity.   The general rule is, when articles are sold upon an executory contract like the one in question, that the delivery and acceptance of the articles after examination, or an opportunity to examine them, is a consent of agreement that the articles correspond with the contract, and precludes a recovery for any defects which may exist. * * * The vendee must immediately rescind the contract, and return or offer to return the goods.   He cannot retain the property, and afterward claim damages by action or recoupment for inferior quality.   Such a transaction differs from a sale with warranty in that the stipulated quality is a part of the contract itself, and not collateral to it.   In the latter case the vendee is not bound to return the property, but may retain it, and sue upon the collateral agreement."

This rule has been recognized in all the subsequent cases.   In Zabriskie v. C. V. R. R. Co., 131 N. Y. 72, 29 N. E. 1006, it was said:

"In cases of the latter character [executory contracts for the manufacture and sale or delivery of goods of a particular description], where the quality of goods is capable of discovery upon inspection, and where, after full opportunity for such inspection, the goods are accepted, and no warranty attends the sale, the vendee is precluded from recovering damages for any variation between the goods delivered and those described in the contract."

In Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831, it is said:

"There is no dispute as to the rule of law touching the rights of parties under an executory contract for the future sale and delivery of goods of a specified quality in the absence of express warranty.   The quality is a part of the description of the thing agreed to be sold, and the vendor is bound to furnish articles corresponding with the description.   If he tenders articles of an inferior quality, the purchaser is not bound to accept them.   But, if he does accept them, he is, in the absence of fraud, deemed to have assented that they correspond with the description, and is concluded from subsequently questioning it.   This imposes upon the vendee the duty of inspection before acceptance, if he desires to save his rights in case the goods are of inferior quality."

This presents, we think, the true rule to be applied in determining the measure of the plaintiff's damages.   Here the defendant proceeded in the execution of the contract.   It delivered 2,000 out of the 10,000 wrenches which it agreed to manufacture and deliver.   A portion of these wrenches was accepted by the plaintiff, and a portion returned to the defendant as not in compliance with the contract.   As to the portion accepted, there can be no recovery because of the inferior quality of the articles accepted.   As to the portion returned by the plaintiff to the defendant as inferior, so far as they have been paid for, the plaintiff would be entitled to recover the amount that he has paid for the ones returned.   I cannot find, however, that it appears that plaintiff paid for the wrenches that he returned to the defendant.   The plaintiff was also

entitled to recover for any damages sustained in consequence of a breach of the contract to manufacture and deliver the 8,000 wrenches that the defendant has failed to deliver. Where the articles to be manufactured and delivered have a market value, the measure of damages for a breach of the contract, where the manufacturer fails to deliver the articles that he has agreed to deliver, is the difference between the market value of the articles to be delivered and the contract price to be paid to the manufacturer. Where, however, there is no market value, the rule of damages is the difference between the value of the articles to the vendee, if they had been delivered, and the price that the plaintiff was to pay therefor, to be ascertained by the jury upon the evidence.

As was said in Murray v. Stanton, 99 Mass. 345:

"Where there is 'a market value,' it shows that the price at which either party may have relief from the consequences of the default of the other, and therefore it properly shows his damages; but, when there is no such standard, the damages must be estimated from other means of valuation."

In Parsons v. Sutton, 66 N. Y. 92, Judge Earl says:

"The ordinary rule of damages in such case is, as already stated, the difference between the contract price and the market price at the time and place of delivery. When the buyer can go into the market and buy the article which the seller has failed to deliver, this is the only rule, as it offers the buyer full indemnity. If there is no market for the article where it is to be delivered, and it cannot be had there with reasonable diligence, and the buyer suffers damages because of the seller's failure to deliver, which is the proximate and natural consequence of such failure, such damages can be recovered."

In Booth v. Spuyten Duyvil Rolling Mill Co., 60 N. Y. 492, the court say:

"For a breach of an executory contract to sell and deliver personal property the measure of damages is, ordinarily, the difference between the contract price and the market value of the article at the time and place of delivery. * * * It is expressly found that there is no market price for the steel caps, and it does not appear that there was any market price for the completed rail. The presumption is, from the facts proved, that there was not. It was a new article, and the contract was made to bring it into use."

These remarks apply to this contract, and, there being no market value of the articles to be manufactured, the plaintiff was entitled to recover such damages as the jury should find it sustained by reason of the failure to deliver the articles agreed to be delivered, based upon the fair value of the articles to the plaintiff, had they been delivered, less the amount that they were to pay the defendant for the articles when manufactured and delivered, and that question was to be submitted to the jury and determined by them upon the evidence. As we held upon the former appeal, the plaintiff was also entitled to recover the $500 paid upon the execution of the contract, which was to be applied upon the last 10,000 wrenches to be manufactured and delivered.

The remaining question is as to the right to recover the amount paid by the plaintiff to the defendant for the tools manufactured by the defendant for the purpose of carrying out the contract. The contract provided that "the tools necessary for making these wrenches, amounting to fifteen hundred dollars ($1,500), the party of the first part agrees to settle for on presentation of weekly bills, and full inventory of tools to be furnished by the party of the second part," and it is

conceded that the plaintiff had paid the defendant the $1,500 for the tools necessary for making these wrenches. Rose, an engineer and mechanic, who represented the plaintiff, testified that a day or two before he was examined he went to the defendant and made a demand for these tools; that the tools were afterwards delivered to him, and that these tools were afterwards examined by an expert for the plaintiff. This expert testified that he was familiar with the proper kind of tools for the making of first-class wrenches of this kind; that he examined the tools furnished by the defendant for the manufacture of these wrenches; that he found that a portion of the cutters were worn and broken, and found other defects in them, which he specified; that it was the character of these tools that caused the varying thickness between the top and lower sides of the sleeve of the wrench, which constituted one of the defects pointed out by him in the wrenches that had been delivered to the plaintiff; that "the method of making the sleeve, as far as I am able to judge from the tools, was such that with those tools the forming of the space through which the shank passes could not be made uniform, and that is evident by the fact that none of the sleeves are uniform. I found that all the tools that I could apply to the making of any portion of this wrench generally had that defect, that they were not positive, and they were not built in such a way that the same result would be produced on each wrench that was made with those tools. * * * Those tools will not make wrenches like the model sample wrench. There is no other reason, other than those I have given; but the tools are not made in such a way that they will produce a uniform article. It is hit or miss whether the sleeve comes out one way or comes out another way, due to the way the tools are made, and the operation of the tools."

Upon this evidence, I think it would be a question for the jury to say whether these tools, as described by this witness, were a compliance with the contract; and, if not such a compliance, the plaintiff would then be entitled to recover from the defendant the amount that it had paid for the tools. There had been no acceptance by the plaintiff of the tools that were manufactured for it by the defendant, as the tools had never been delivered to the plaintiff, except a day or two before the trial, and then merely for the purpose of examination.

This being, we think, the rule of damage, we are now to determine whether, in submitting the question to the jury, the court observed these rules, or whether there was error that requires us to reverse the judgment. Upon the question of damages, the court charged the jury that:

"If you find, however, that he (defendant) has not complied with it (the contract), and that he has failed to perform his contract in the particulars which have been specified, then you come to the question of how much the plaintiff is entitled to recover. He would be entitled to recover, first of all, the $500 which he has paid, and which was to be applied as the past payment upon the last thousand of the wrenches to be manufactured. There is one other feature of this case. If you find that these wrenches which were furnished were defective, and were not in accordance with the terms of the contract, then the plaintiff is entitled to recover the sum that he has paid for them. He has testified that he paid the sum of $646, I think, and to the extent that they were depreciated by reason of these defects he is entitled to recover it back. If you find that they were entirely valueless, he is entitled to recover the whole of it.

If you do not find that, but find there was some damage, he is entitled to recover such portion of that as you find he has sustained injury. Another feature of it: Under the contract the defendant was to furnish but the plaintiff was to pay $1,500 for suitable machinery. This machinery was to be delivered to the plaintiff upon the completion of the contract. After the 10,000 wrenches had been made the machinery was to be delivered, and was to belong to the plaintiff. Plaintiff has paid for the machinery $1,500, and he complains now that it is not the proper machinery for the purpose for which it was manufactured, and he has called your attention to the evidence which he says justifies that claim; that the work itself shows that it was not proper machinery. One witness, at least, has testified that it was not proper machinery, and that it was not such machinery as was proper to manufacture this kind of work. If you find that is so, then the plaintiff is entitled to recover the $1,500 which he has paid for the machinery.  *  *  *  The three elements, as I understand, that the plaintiff claims as damages, are, first, the $500 which he paid at the inception of the contract; the $1,500 for the machinery, and the $646 of the balance which he had paid for the wrenches; the entire payment being $946, but there being 500 of those wrenches that were retained by the plaintiff, upon which there was an allowance of 60 cents each, making the sum of $300, which would be deducted from the $946, leaving $646 as the amount that plaintiff had actually paid."

It was undoubtedly error to charge that the plaintiff was entitled to recover the sum of $646 if the jury found that the wrenches that had been delivered to the plaintiff were entirely valueless, as the plaintiff, by accepting those wrenches, was precluded from questioning the quality of those delivered and accepted as a compliance with the contract. Upon the evidence the jury would have been justified in finding that the tools were not such as it was contemplated should be manufactured and paid for by the plaintiff; and, if that is so, I think the plaintiff was entitled to recover the $1,500 paid by the plaintiff to the defendant for the tools. After the charge of the court, counsel for the defendant stated, "I desire to except to so much of your honor's charge as states that the plaintiff is entitled to recover damages for the wrenches that he has on hand;" in reply to which the court said, "I will hold that this was a warranty to manufacture according to sample, and that being so he had a right to reject it at any time;" to which counsel for the defendant said, "I take an exception." As the plaintiff was not entitled to recover for the wrenches that had been delivered and accepted by him, this was error, and the verdict cannot be sustained. The learned trial judge fell into this error in consequence of a clause in the opinion on the former appeal in which it was stated: "As we view the contract, the sale was by sample, and there was a warranty that the wrenches would substantially conform to the sample, and this warranty survived acceptance." But that was an inadvertence, and is not the true construction of this contract, we think is established by the authorities before cited. It was not intended by the court to hold that this was, strictly speaking, a sale by sample, or that there was any warranty, express or implied, that survived the acceptance of the article to be manufactured by the plaintiff.

Neither the case of Zabriskie v. C. V. R. R. Co., 131 N. Y. 72, 29 N. E. 1006, nor Brigg v. Hilton, 99 N. Y. 519, 3 N. E. 51, 52 Am. Rep. 63, cited to sustain that proposition, is applicable to such a contract as that before us. In the Zabriskie Case the contract was for a certain quality of coal sold and delivered by the defendant under a written contract whereby "the said vendors agreed to sell and deliver to the

defendant, during the year ending June 1, 1898, at Norwood, N. Y., 30,000 tons of 'Powelton coal, of same quality and kind as furnished you during the past year,' at $3 per net ton." It was contended in that case by the plaintiff that there was no warranty of the quality of the coal, and that by its acceptance the defendant had precluded itself from claiming damages for a breach of contract. In answer to that claim the court said:

"A satisfactory answer to this claim appears in the fact that it is not found or shown that the defects in the coal were visible on inspection, but, on the contrary, it negatively appears from the conduct of both the vendors and vendee that they were not discernible on inspection. A further answer to this point is found in the proposition that the evidence authorized the finding that there was a warranty as to the quality of the coal sold." :

And, further, the court said:

"We are, however, of the opinion that, upon the evidence, the contract contained a warranty of quality which survived the acceptance of the goods. * * * A contract of sale which points out a known and ascertainable standard by which to judge the quality of goods sold is, for all practical purposes, a sale by sample, and renders the vendor liable for damages upon a breach of warranty, although there has been an acceptance after opportunity to inspect the goods."

—That in case of an executory contract for the manufacture and sale or delivery of goods of a particular description, however, where, after full opportunity for inspection, the goods are accepted and no warranty attends the sale, the vendee is precluded from recovering damages for any variation between the goods delivered and those described in the contract.

In the Brigg Case the contract sued on was one by which the defendants bought goods of the plaintiffs by sample, which represented sound and merchantable goods, suitable for and known as cloakings, and which the plaintiffs agreed should in all respects be equal to the samples. It was held that there was an express warranty as to the quality of the goods agreed to be furnished—a situation that has no application to this case, which was simply an agreement to manufacture and deliver certain goods specified, of a certain prescribed quality.

We think, therefore, that the judgment must be reversed, and a new trial ordered, unless the plaintiff is willing to deduct from the verdict the sum of $646, the amount paid for the wrenches delivered; and that, upon the plaintiff stipulating to reduce the judgment as entered to the sum of $1,801.47, the judgment as so modified and the order appealed from will be affirmed, without costs; if the plaintiff fails to make such stipulation, the judgment and order must be reversed, with costs to the party finally prevailing in the action to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

LAUGHLIN, J. (dissenting). The terms of the contract are not in dispute. As shown in the record now before us, the contract is the same as that appearing in the record on a former trial herein, and stated in the opinion. Ideal Wrench Co. v. Garvin Machine Co., 65 App. Div. 235, 72 N. Y. Supp. 662. Upon the former trial the plaintiff was nonsuited. We reversed the judgment upon the ground that the case

should have been submitted to the jury, but for the guidance of the court upon the new trial we expressed our opinion upon other questions presented and discussed. It was stated in the opinion, in which the majority of the court concurred, that this was a contract for the sale of wrenches to be manufactured in accordance with a sample or mode prepared and agreed upon by parties, and the defendant having covenanted that the wrenches would be "made in a first-class manner, in every way equal to that of the model submitted"; that this was a warranty that the wrenches would conform to the sample; and that plaintiff's assignor, therefore, was not obliged to inspect and reject the wrenches when delivery was tendered, but was at liberty to accept and retain them, and offset his damages against any claim that the defendant might have for the contract price, or could recover his damages in an independent action. Upon the new trial which we awarded the court followed our opinion in the former appeal. The only reason now assigned for a reversal or modification of the judgment in the prevailing opinion is that the court erred in holding, in accordance with our former opinion, that this was a sale by sample, and that there was a warranty that the wrenches would conform to the model. The theory of the prevailing opinion seems to be that all sales of goods not in esse are executory contracts for the manufacture and delivery of goods, and that the purchaser must, at his peril, within a reasonable time after delivery, or tender of delivery, inspect and reject those that do not conform to the contract, and this even though the goods were to be manufactured to conform to a particular sample or model which was made the basis of the contract.

The doctrine of a sale by sample was originally only applied to a sale of goods in esse, where, for convenience, a sample was taken from the bulk of the goods, and exhibited to the purchaser, who in purchasing had a right to believe that the sample exhibited was a fair sample, and that the bulk of the goods conformed thereto. This doctrine, however, has been extended as the methods of doing business have changed. Manufacturers of goods now prepare a sample, and, before expending money in the extensive manufacture of goods in accordance with the sample, by exhibiting the sample solicit orders for goods to conform thereto. Such contracts are now regarded as sales by sample, and the doctrine of warranty which applied only to goods in existence has now been extended to them. Under the rule as it originally existed, if the defendant had a quantity of bicycle wrenches manufactured and in stock, and presented one to the plaintiff's assignor as a sample, in reliance upon which those in stock were purchased, there can be no doubt that the purchaser would not have been obliged to inspect the wrenches when delivery was tendered, and to reject them if they did not conform to the sample wrench exhibited, but that he might accept them and maintain an action for damages for breach of the warranty. I see no difference in principle, so far as this question of warranty is concerned, between such a sale and the sale in the case at bar, where the sample wrench was agreed upon, and the defendant, without other description than the sample, contracted to manufacture and deliver wrenches to conform thereto. The only possible difference there can be is that, if the wrenches were in existence at the time of making the contract, the

vendor would or could know whether or not they conformed to the sample. In the case at bar, while it was originally understood that the plaintiff's assignor was to furnish the sample, the defendant subsequently, by mutual consent, manufactured it. The defendant undoubtedly had the model from which it was made, or could readily make one, and thus insure that the wrenches to be manufactured would correspond in all dimensions with the sample. Presumably, also, the defendant knew the quality of the material from which the sample wrench was made, and could obtain the same quality of material for manufacturing wrenches to fill the order; but that is immaterial, for the defect here complained of relates not to material, but to dimensions, it having been shown on the part of the plaintiff that the dimensions did not conform to the sample in the particulars stated in our former opinion. The defendant contracted to manufacture the wrenches in accordance with a particular pattern, without other description. It failed to perform its contract in·this regard, and contends that the plaintiff's assignor can have no relief on account of his failure to promptly inspect and return the wrenches. The cases cited .on the former opinion were then regarded as sufficient to show the extension of this doctrine of sales by sample and warranty. The rule there cited is now attacked by the prevailing opinion, and it is claimed that the authorities cited do not sustain it. It therefore becomes necessary to make a more extended examination of the authorities. In Gurney v. Atlantic & G. W. Ry. Co., 58 N. Y. 358, the point decided was that where certain railroad frogs were manufactured under an executory contract, and they did not conform to the pattern or sample, in that there were latent defects discoverable only by use, the purchaser, upon discovering the defects, was not obliged to rescind the contract and return the frogs, but could retain them, and recoup his damages as for a breach of warranty; the court on this point following Day v. Pool, 52 N. Y. 416, 11 Am. Rep. 719. The observations made in the opinion, quoted by Mr. Justice Ingraham, as to whether a recovery could have been had if the defects had not been latent, were therefore obiter. The case of Zabriskie v. C. V. R. R. Co., 131 N. Y. 72, 29 N. E. 1006, cited in our opinion as an authority for the proposition that this was in effect a sale by sample, is cited by Mr. Justice Ingraham as holding a contrary doctrine. That was an action to recover the contract price of coal. The coal was delivered under a contract by which the vendor agreed to sell and deliver to the defendant during the year ending June 1, 1888, 30,000 tons of "Powelton coal, of same quality and kind as furnished you during past year." It does not appear from the statement of facts whether the coal had been mined or was even owned by the vendor at the time of making the contract. The same vendor had furnished the defendant a quantity of Powelton coal the previous year. The court decided that this was "practically a sale by sample," and stated in the opinion that "although the standard selected for comparison was not present, or in existence even, at the time of the sale, its qualities had been observed and demonstrated, and were capable of exact ascertainment by the evidence of those who had witnessed the results produced by the consumption of the coal. It was unnecessary for the purpose of effecting a comparison of the respective qualities of

the two specimens of coal that they should be present and compared side by side or tested at the same time. * * * The standard selected for testing the quality of the goods sold was considered sufficiently definite and precise by the parties to the contract, and it does not appear that there was any difficulty in practice in applying it to the subject. A contract of sale which points out a known and ascertainable standard by which to judge the quality of goods sold is, for all practical purposes, a sale by sample, and renders the vendor liable for damages upon a breach of the warranty, although there has been an acceptance after opportunity to inspect the goods." The court also distinguishes that case from the cases of Coplay Iron Co. v. Pope, 108 N. Y. 232, 15 N. E. 335; Studer v. Bleistein, 115 N. Y. 316, 22 N. E. 243, 5 L. R. A. 702; and Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831—upon the ground that they were executory contracts for the manufacture and sale or delivery of goods "of a particular description"; and further said, in distinguishing the case then at bar from executory contracts of sale by a particular description:

"While the term 'Powelton coal' may be said to be a descriptive term merely, when it is said that the coal was to be Powelton coal of the same quality and kind as that delivered in the previous year it goes beyond mere words of description, and refers to the intrinsic value of the goods sold, in language which cannot be misunderstood, and can be satisfied only by a consideration of its fitness to perform the work required of it in the defendant's business."

It is also claimed in the prevailing opinion that the case of Brigg et al. v. Hilton, 99 N. Y. 519, 3 N. E. 54, 52 Am. Rep. 63, cited in our former opinion upon the same proposition, is not in point. There an order for cloth was given, the goods to be "similar fabric and similar quality" to sample exhibited. The "general characteristics of the goods all through were stated to be equal in every respect to the sample." The goods were subsequently manufactured, delivered, and accepted after ample opportunity to examine them. The vendee, on being sued for the purchase price, counterclaimed damages for breach of warranty. It appeared that the defects would have been discovered upon examination. The court held that there was a warranty that the goods to be furnished would be of like quality as the sample, and that the circumstance that the goods had not been manufactured did not affect this question. The case of Pierson et al. v. Crooks et al., 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831, cited by Mr. Justice Ingraham, I think is not in point. That was an executory contract for the sale of goods by description, and there was no sample or model exhibited or involved in the contract. There being no express warranty, it was held that the purchaser could not be heard to complain that the goods were not of the quality described in the contract where, after reasonable opportunity for inspection, he accepted and retained them. If it may be said that this question was previously involved in doubt, I think it has been finally determined by the Court of Appeals in Henry & Co. v. Talcott, 175 N. Y. 385, 67 N. E. 617, decided since our former opinion. That was an action for goods sold and delivered under an executory contract for the manufacture thereof. The defendant interposed a counterclaim for breach of warranty, claiming that the goods were to be manufactured according to certain samples.

It appeared that the defendant accepted, retained, and used the goods. The defendant gave evidence tending to show that the goods were to be "equal to the sample," and evidence was presented in behalf of the plaintiff tending to show that the sample was merely intended to show the design, character, color, and general appearance of the cloth. The defendant also attempted to show that the goods were defective in quality; but this evidence was also excluded upon the theory that it was not a sale by sample, and that no warranty survived acceptance. The court in reversing the judgment for error in excluding this evidence held that the evidence presented a question for the jury as to whether it was a sale by sample, and stated the rule of law to be that:

"Upon a sale by sample there is an express warranty that the goods are equal in quality to the sample furnished. * * * The seller need not state that the bulk of the goods correspond with the sample, as the warranty is 'implied in fact,' and is express, for it must be found as a fact that the parties intended the sale to be made by a sample, and that the exhibition of the sample was regarded by them as an affirmation as to the quality of the article sold. Gurney v. Atlantic & G. W. R. R. Co., 58 N. Y. 364; Keener on Quasi Contracts, 5. In the absence of fraud, the warranty does not cover latent defects, unless the seller is the manufacturer, when it may extend to latent defects growing out of the process of manufacture. If upon delivery the goods fall below the quality of the sample, the buyer may either reject them, or may accept and sue for damages upon the warranty. Zabriskie v. Central V. R. R. Co., 131 N. Y. 72, 29 N. E. 1006; Kent v. Friedman, 101 N. Y. 616, 3 N. E. 905; Day v. Pool, 52 N. Y. 416, 11 Am. Rep. 719. The rule is the same whether the goods are in existence at the time of the contract of sale or are to be manufactured, although it is sometimes said that such a sale is not technically one by sample. Brigg v. Hilton, 99 N. Y. 517, 3 N. E. 51, 52 Am. Rep. 63; Gurney v. Atlantic & G. W. R. R. Co., supra. The mere exhibition of a sample is not of itself an agreement to sell by sample, and it is usually a question of fact for the jury to decide whether, under all the circumstances, the parties intended that the sale should be made in that way. Even if the word 'sample' is used in a written order for goods to be manufactured, the sale is not by sample if the order contains minute specifications and descriptions, involving a great number of changes, variations, and differences between the article to be made and the sample shown. Smith v. Coe, 55 App. Div. 585, 67 N. Y. Supp. 350, affirmed 170 N. Y. 162, 63 N. E. 57. A sale, however, may be made partly by description and partly by sample, and in that event the goods must correspond to the description in the respect covered thereby and to the sample in other respects. Bach v. Levy, 101 N. Y. 511, 514, 5 N. E. 345; Gould v. Stein, 149 Mass. 570, 22 N. E. 47, 5 L. R. A. 213, 14 Am. St. Rep. 455; Burdick on Sales, 95; Benjamin on Sales (7th Ed.) 684. If the goods, when delivered, do not equal the sample, the buyer need not return them in order to recover for the breach of warranty, although an offer to return is necessary if he wishes to rescind the sale and sue for the amount paid in advance of delivery."

I am therefore of opinion that the judgment should be affirmed, with costs.

HATCH, J., concurs.