(103 App. Div. 480.)

### CRANE CO. v. COLLINS et al.

(Supreme Court, Appellate Division, First Department. April 14, 1905.)

1. SALES—IMPLIED WARRANTIES—WAIVER.

> The acceptance of goods by the vendee constitutes a waiver of a breach by the vendor of the implied warranty that the goods shall be as ordered and suitable to the purpose for which they are intended, except as to latent defects not discoverable from inspection, which, also, are waived when the vendee, after their discovery, nevertheless retains the goods although it is possible to return them, and he cannot in such case charge the vendee with the expense of putting them in proper condition.

> [Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 818–822.]

2. TRIAL—DIRECTED VERDICTS—DISPOSITION OF COUNTERCLAIMS.

> The court, on directing a verdict for plaintiff on the cause of action set up by him, should have deducted from the verdict so directed the amount of a counterclaim arising out of a distinct transaction pleaded by defendants, or should have permitted defendants to introduce evidence in support of their counterclaim, and, if established, then have deducted the amount thereof.

> Van Brunt, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term.

Action by the Crane Company against William P. Collins and another, copartners, etc. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed on condition.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

James A. Allen, for appellants.
John C. Fisher, for respondent.

INGRAHAM, J. The action was brought to recover the agreed price of certain brass coils manufactured by the plaintiff upon an order given by the defendants. The defendants making the contract set up as a defense that the coils as manufactured did not comply with the order; that the object of these coils was to hold steam, which was known to the plaintiff; that the coils which were delivered by the plaintiff were negligently, improperly, and defectively made, but that the defects of the same were latent, and did not appear upon an inspection, but could only be detected when steam was run through them; that when these coils were delivered they were inspected, but, these defects not appearing, they were accepted and retained by the defendants, without knowing of the defects; that, after connection had been made with steam pipes and steam was used in them, the defects were discovered, whereupon they notified the plaintiff, and requested it to remedy and repair the de-

fects, which it has refused to do, whereupon the defendants expended $304.15 in putting the coils in proper condition for use. These facts are also set up as a counterclaim, and judgment is demanded against the plaintiff for the amount of the cost in making the repairs. When this case came on for trial, the plaintiff moved for judgment upon the pleadings and for a dismissal of the counterclaim. In answer to this motion, the defendants stated that they did not claim an express warranty. This motion was denied, and the plaintiff then introduced its evidence tending to sustain the cause of action set up in the complaint. The plaintiff having rested, the defendants moved for a dismissal of the complaint, which was denied, whereupon the plaintiff renewed its motion for the direction of a verdict, upon the ground that, as the answer of the defendants admits that they accepted and retained these coils, any implied warranty would not survive acceptance, and that there was no implied warranty upon the facts alleged. Whereupon the court directed a verdict for the plaintiff for the amount which the answer of the defendants admitted was due on the contract price.

The contract was one to manufacture articles for the defendants. The use to which these articles were to be put was understood by the plaintiff at the time it accepted the order. We must assume that the defects complained of were latent, and that, as soon as the defects were ascertained, notice was given to the plaintiff, with a request that it repair the defects specified, which the plaintiff failed to do, and which the defendants were compelled to do in order to use the articles. The defendants, having received and retained the articles, were liable for the contract price. When the defects in the articles were ascertained, the defendants were either bound to return the articles to the plaintiff or to pay for them. A retention of the articles after it was discovered that they were not of the quality ordered was a waiver of the defects, and, although the defects could not be ascertained by a mere inspection, when they were ascertained the only way that the defendants could avoid paying for them was to return them to the plaintiff. This, it is conceded, the defendants did not do. There was therefore no defense alleged.

The further question whether, the plaintiff knowing that these coils were to be used for the purpose of conveying steam through them, there arose an implied warranty that the coils when manufactured would convey steam through them, which survived acceptance and retention of the articles, is presented. Confounding an implied warranty with a failure to manufacture and deliver the articles contracted for has been the cause of some confusion in the reported cases. Undoubtedly, the rule is that where articles of a particular description are agreed to be manufactured or sold, and the articles are not of the kind specifically described, a retention of them, after the defect could with reasonable diligence have been discovered, is a waiver of the defect, and no cause of action survives the acceptance and retention of the articles so manufactured, sold, and delivered. Where, however, there is an express warranty of quality, there the vendee has a right to retain the articles and offset or counterclaim the damages caused by a breach thereof. The

question of implied warranty upon a contract for the manufacture
and sale of merchandise was discussed, and the authorities were
examined, in Carleton v. Lombard, Ayres & Co., 149 N. Y. 137, 43
N. E. 422, with a further discussion of the question on a motion
for reargument, in the same volume, at page 601, 44 N. E. 1121, and
the proposition is there stated (a proposition which has never been
seriously disputed) that, in an executory contract for the manufac-
ture and sale of merchandise, there is an implied agreement that the
articles manufactured should be of a character and quality suitable
for the use to which they were to be put. In that case the article
was a cargo of refined petroleum, which had been purchased by the
plaintiff and was delivered by the manufacturers upon shipboard at
their refinery, in fulfillment of a contract that had been made by
the plaintiff to a firm of merchants in India. The defect in the
petroleum was one that could not be discovered by inspection, and
it was held that the receipt by the vendee on shipboard, subject to
an inspection which would not disclose the defect, was not a waiver
which prevented the vendee from suing for damages sustained by
a failure of the vendor to comply with the contract, and that, after
the discovery by the vendee of the defect in the petroleum, there
was no act of his which could be construed into a waiver of the
objection to the quality of the goods purchased. The question was
not presented in that case as to whether, after the discovery of the
defect, the retention of the merchandise manufactured and sold un-
der the contract was a waiver of the breach of the contract by the
vendors. Applying the principle upon which that case was decided,
the fact that the defendants accepted these coils did not waive their
right to return them upon the discovery of the latent defects. But
here, after the discovery of the latent defects, the defendants still
retained the manufactured articles, and made no offer to return
them. The question, therefore, is, was this implied obligation that
the articles were of a quality reasonably sufficient for the use to
which they were to be put waived by the retention of the articles
after the discovery of the defect? or, in other words, was there
a liability in favor of the defendants, and against the plaintiff,
which survived a retention of the articles after the vendee had
knowledge of the defect?

In Carleton v. Lombard, Ayres & Co., supra, in speaking of the
question presented in that case, the court say (page 150 of 149 N.
Y., page 426 of 43 N. E.) :

"If it be true that the defendant in this case delivered alongside the vessel
an article which was unmerchantable and unfit for transportation, in conse-
quence of hidden or latent defects arising from the process of manufacture,
and of which it had or should have had knowledge in the exercise of reason-
able care, it has not, in any just or substantial sense, performed its contract,
although the article so delivered was of the brand, color, test, and specific
gravity called for by the writing. The plaintiffs were not only entitled to
the thing described, but to that thing in such condition and so free from hid-
den defects as to make it available to them as an article of commerce and
fit for transportation."

When, therefore, these coils were delivered to the defendants and
accepted by them, they were precluded then from insisting that the
articles were not such as they had ordered, except so far as there

were latent defects which an inspection would not disclose, and of which the manufacturer either had or was presumed to have had knowledge; and the plaintiff, therefore, had not, "in any just or substantial sense, performed its contract." But the defect was discovered, and the defendants, notwithstanding the defect, and after they had knowledge of it, retained possession of the articles manufactured and delivered to them.

In Gurney v. Atl. & G. W. Ry. Co., 58 N. Y. 358, Church, Ch. J., says:

"The general rule is, when articles are sold upon an executory contract like the one in question, that the delivery and acceptance of the articles, after examination or an opportunity to examine them, is a consent or agreement that the articles correspond with the contract, and precludes a recovery for any defects which may exist. * * * The vendee must have an opportunity to examine, and when, from the terms of the contract or the nature of the article, this can only be done by use, and such was therefore the mode of examination contemplated, the vendee is not foreclosed until the test is made. But when made and the defects discovered, is it not the duty of the vendee then to take his ground and rescind the contract, and return or offer to return the property, or be held to a waiver and acceptance? Upon principle, I can see no difference in this respect on account of the time or mode of examination."

But the learned chief judge, in speaking of Day v. Pool, 52 N. Y. 416, 11 Am. Rep. 719, says that that case holds a different doctrine, and that the principle enunciated in the opinion which received the assent of a majority of the court applied to the facts of the Gurney Case, and determined the question in favor of the right of the vendee to retain the property and recoup the damages.

Day v. Pool was an action for damages for a breach of an express warranty upon a contract to sell and deliver to the plaintiff 80 barrels of rock candy syrup, and the question presented was whether the same rights and remedies attached to an express warranty in an executory contract as in a sale of goods. There was also in that case the fact that notice was given to the vendor of the defect in the syrup at an early stage, and that the defendants promised to attend to it; and this was held to be an acquiescence in the plaintiff's use of the syrup, with an implied promise to make it right if it did not prove to be in accordance with the warranty. The contract in Gurney v. Atl. & G. W. Ry. Co., supra, would also seem to have been an express warranty, and the referee found that the order for the goods to be manufactured required that they should correspond in all respects with the sample theretofore delivered by the manufacturers to the defendant.

In Bierman v. City Mills Co., 151 N. Y. 482, 45 N. E. 856, 37 L. R. A. 799, 56 Am. St. Rep. 635, it was alleged the defendant represented to the plaintiffs that it manufactured a certain kind of cloth fit for their use in the manufacture of coats, and that, relying upon this representation, the plaintiffs purchased said cloth and manufactured it into clothing; that it was subsequently discovered that the cloth was damaged, of an inferior quality, rotten, and unfit for any purpose whatever, and that the defendant had concealed the defects from the plaintiffs. It was further alleged that the defect was latent and not discoverable by inspection, but was indicated by wear of the clothing made up from

the cloth sold by defendant; that the only method of ascertaining whether goods of this character were made of proper material was by the actual wearing of the clothing after it had been made up; and that the defects which were subsequently .discovered after the clothing was made up resulted from an improper process of manufacture, and was only discoverable after exposure from being worn. And it was held that the principle applied in Carleton v. Lombard, Ayres & Co., supra, Hoe v. Sanborn, 21 N. Y. 552, 78 Am. Dec. 163, and Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86, was applicable, and that, as the defect could not be discovered until after the goods had been made up, the acceptance of the goods and making them up into clothing was not a waiver of the breach of contract or breach of warranty.

In Smith v. Coe, 170 N. Y. 162, 63 N. E. 57, the contract sued on was to manufacture and sell to the defendants 3,000 bicycles upon specifications furnished, and in pursuance of such order the plaintiff manufactured and delivered to the defendants the bicycles specified, which bicycles were duly accepted by the defendants. It was held that, as there was no express warranty, and no distinct stipulation that the goods to be delivered were to correspond with any designated sample, the claim that the goods did not comply with the contract was waived· by the acceptance of the goods.

In Waeber v. Talbot, 167 N. Y. 48, 60 N. E. 288, the action was brought upon an express warranty, the complaint being amended on the trial by an allegation that the defendants represented the articles sold to be merchantable; but there was no proof that there was any express warranty or any representations made at the time of the sale. It was held that the defendants were bound to deliver the quality of goods called for by the contract; that when these goods were delivered it became the duty of the vendees with reasonable promptness to inspect the entire consignment in the manner allowed by the custom of the trade, and, if it proved unsatisfactory, to rescind the contract and offer to return the goods; that the tendency of the recent decisions is to treat such words as a part of the contract of sale, descriptive of the article sold and to be delivered in the future, and not as constituting that collateral obligation which sometimes accompanies a contract of sale, known as a "warranty"; that where such an agreement.is a part of the contract of sale the vendees are abundantly protected, and, if they failed to inspect, rescind, and return the goods, it was because they neglected to avail themselves of the remedies which the law .afforded them; that in cases of executory contracts for the sale and delivery of personal property the remedy of the vendee to recover damages on the ground that the article furnished fails to correspond with the contract does not survive the acceptance of the property by the vendee after opportunity to ascertain the defect.

In Henry v. Talcott, 175 N. Y. 385, 67 N. E. 617, there was a sale by sample, and therefore an express warranty that the article sold was equal in quality to the sample furnished. It was held that a sale may be made partly by description and partly by sample, and in that event the goods must correspond to the description in the respect covered thereby, and to the sample in other respects; that, if the goods when delivered do not equal the sample, the buyer need not return them in or-

der to recover for the breach of warranty, although an offer to re-· turn is necessary if he wishes to rescind the sale and sue for the amount paid in advance of delivery. Judge Vann, delivering the opinion of the court, says:

"When nothing is said or written upon the subject, and the buyer has ample opportunity ·to examine and inspect for himself and to thus learn the quality, in the absence of fraud, there is no warranty, even if samples are exhibited by the seller, because the parties stand upon an equal footing, and the interests of commerce require that the rule of caveat emptor should apply. Under such circumstances, if the buyer distrusts his own judgment, he should exact a collateral warranty made in express terms, and not rely upon the silent affirmation of the sample."

See, also, Zabriskie v. C. V. R. R. Co., 131 N. Y. 72, 29 N. E. 1006; Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831.

In Ideal Wrench Co. v. Edison Illuminating Co., 92 App. Div. 187, 87 N. Y. Supp. 81, these cases were all considered, and we held that, where there was no express warranty, the acceptance and retention of the manufactured articles precluded the defendant from subsequently alleging that they did not comply with the contract of sale.

We think this rule was applicable to this case. The defendants could not retain the possession of the manufactured articles after they had discovered that they were defective, and did not comply with the contract of sale, and either defend in an action for the contract price, or allege a breach of the conditions of the contract as to the quality of the articles as a counterclaim. It can make no difference when the defect of quality is discovered. If the defect is latent, and can only be discovered by a use of the articles, which use in itself is a conversion of the goods sold, or such a use of the goods that it is impossible to return them, then, of course, the obligation to return does not exist, for a return of the articles sold is rendered impossible by relying upon the representations of the vendor, and this was the case of Bierman v. City Mills Co., supra, and Carleton v. Lombard, Ayres & Co., supra; but where, after the defect is discovered, the vendee has an opportunity to return the goods, a retention of the goods precludes the vendee from alleging that the articles were not of the description and quality provided for in the contract. Applying this principle to the sale in question, the defect in the articles manufactured is alleged to be that they were "negligently, improperly, and defectively made by the plaintiff"; that the defects were latent, did not appear when they were delivered, and could only be detected by using them; that the defendants accepted the ·goods without knowing of the defects, or of the negligent and improper manner in which they were made, and that upon discovering the defects of the same they promptly requested the plaintiff to remedy the defects, which it refused to do. And as a counterclaim the defendants allege that—

"All the defects aforesaid were latent, and of such a nature that they were not discoverable by due diligence in the application of ordinary methods of inspection of the said coils, and that they could not be ascertained until steam was turned into and through them; that, upon detecting the said defects, they promptly notified the plaintiff of the same, so they would put the said coils in a good, usable, and merchantable condition; and that, unless it did so, they would put the said coils in a good, usable, and merchantable condition, and charge the expense of doing so to it."

This was clearly no defense to the action for the contract price, nor could it be the basis of a counterclaim, for, when the defects were discovered, the defendants then were bound to return or offer to return the coils, and there is no allegation to excuse the retention of the coils by showing that such a return was impossible. I think, therefore, that upon the pleadings the plaintiff was entitled to the direction of a verdict for the contract price.

There is, however, a second counterclaim to the alleged cause of action set up, which alleges that the defendants sold and delivered certain goods, wares, and merchandise to the plaintiff, of the reasonable value of $49.80; that the plaintiffs have paid thereon the sum of $43, and that the sum of $6.60 is due and unpaid on account thereof. In directing a judgment for the plaintiff, this amount does not seem to have been allowed. Upon the direction of a verdict for the plaintiff for the amount claimed, the defendants were entitled to have this counterclaim deducted, or should have been allowed to prove the counterclaim, and, if established, to deduct it from any amount found due.

The judgment and order must therefore be reversed, and a new trial ordered, unless the plaintiff stipulates to deduct from the verdict the amount of $6.60, reducing the judgment as entered to the sum of $314.85. If the plaintiff consents to such a reduction, the judgment as so modified, and the order appealed from, will be affirmed, without costs of this appeal. All concur, except VAN BRUNT, P. J., and LAUGHLIN, J., who dissent.